BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
H. CLAY BARNETT, III (*pro hac vice forthcoming*)
J. MITCH WILLIAMS (*pro hac vice forthcoming*)
DYLAN T. MARTIN (*pro hac vice forthcoming*)
TRENT H. MANN (*pro hac vice forthcoming*)
272 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
dee.miles@beasleyallen.com
clay.barnett@beasleyAllen.com
mitch.williams@beasleyallen.com
dylan.martin@beasleyallen.com
trent.mann@beasleyallen.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| ABDUL SYED, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR SALES U.S.A., INC., and TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>Defendants. | Case No.    5:24-cv-01963<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

BLOOD HURST & O' REARDON, LLP

00218260

Plaintiff Abdul Syed ("Plaintiff") brings this class action lawsuit against Defendants Toyota Motor Sales U.S.A. Inc. and Toyota Motor North America Inc. (collectively, "Toyota" or "Defendants"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class," as more fully defined below), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief and based upon the investigation of counsel, including counsels' testing, review of consumer complaints available on the database of the National Highway Traffic Safety Administration ("NHTSA"), and other publicly available information, alleging as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought by Plaintiff individually and on behalf of all others similarly situated who purchased or leased a 2024 or newer Toyota Tacoma truck equipped with either 8-speed automatic transmissions or 8-speed automatic hybrid transmission (the "Class Vehicles")[1], which suffer from an undisclosed defect that causes the vehicles to harshly engage or fail to shift into gear, limits forward motive power through "Limp Mode," and causes internal component damage and catastrophic transmission failure (the, "Transmission Defect" or "Defect").

2.      All Class Vehicles are designed, manufactured, tested, distributed, marketed, sold and/or leased by Toyota and equipped with either an Aisin-Toyota AL80E, AL80F, or L580F 8-speed automatic transmission (the "Transmission" or "Transmissions").[2] Upon information and belief, the Transmissions are substantially similar in their design and manufacture, and have the same Transmission Defect.

---

[1]      Plaintiff reserves the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles.

[2]      Aisin Corporation is a global manufacturer and supplier of automotive products, who, with Toyota, and through their related entities/subsidiaries, manufacture the transmissions in the Class Vehicles. Toyota owns approximately 24% of Aisin

BLOOD HURST & O' REARDON, LLP

2

00218260

BLOOD HURST & O' REARDON, LLP

3.     This action arises from Toyota's failure, despite longstanding knowledge of a material design and/or manufacturing defect (and the inherent unreliability and danger of the Class Vehicles), to disclose the Transmission Defect to Plaintiff and other Class Members, and its decision to sell and continue selling the Class Vehicles with the Transmission Defect.

4.     In high-torque vehicle applications, the drivetrain, which includes the transmission, must be designed and manufactured with components that are tolerant of high torsion, heat, and shear stress and must be immune to internal component dislodgment or breakage.

5.     According to Toyota, the Transmissions were designed to be "compact and lighter than comparative conventional transmissions, lowering a vehicle's fuel requirements," and "minimize energy loss and heighten transmission efficiency."

6.     These Transmissions were purportedly manufactured with improved gears utilizing a "new technique" that provides for "a lower coefficient of friction when the gears engage," as well as configuring the friction material inside the clutch assembly to "reduce clutch torque loss by approximately 50 percent during rotation."

7.     Moreover, the Transmissions' purportedly improved gears coupled with a newly developed high-performance compact torque convertor provide for a broader gear lockup range, resulting in a "quick and smooth response to accelerator pedal operation" for an "as desired direct driving feel." Toyota stated that "[t]hese and other efforts resulted in achieving one of the world's best transmission efficiencies."[3]

8.     However, Defendants wrongfully and intentionally concealed, and continue to conceal, from the pre-purchase/lease transaction to the present day, the Transmission Defect.

_____

Corporation. *See* https://global.toyota/en/newsroom/corporate/41080974.html.

[3]     https://global.toyota/en/powertrain/transmission/ (Published December 6, 2016).

CLASS ACTION COMPLAINT

00218260

9.    The Transmission Defect is an inherent design defect that manifests spontaneously and without warning during normal and intended vehicle operation, thereby posing an unreasonable safety hazard to drivers, passengers, other motorists, and pedestrians. Owners and lessees of the Class Vehicles have reported significant and unexpected safety risks that are directly attributable to the Transmission Defect.

10.    Toyota confirmed the existence of the Transmission Defect in a "Tech Tip" titled "Torque Converter Required During Transmission Replacement with Debris," which was issued to dealers on July 15, 2024.[4] According to Toyota, the communication, which was made only to its technicians, applies to 2024 model year Tacoma vehicles equipped with automatic transmissions, i.e., the Class Vehicles. In the communication, Toyota stated "[w]hen replacing the transmission, if debris is found in the pan, it is required to also replace the torque converter. If the torque converter is not replaced, then the remaining debris may be introduced into the replacement transmission . . . Replace the torque converter and transmission using the appropriate repair manual."[5]

11.    As explained further below, Toyota knew, or was reckless or negligent in not knowing about the Transmission Defect since 2016[6] and likely earlier, based on its pre-sale testing, an increase in Transmission Defect complaints submitted to the National Highway Traffic Safety Administration ("NHTSA") and Toyota Tacoma forums (both of which Toyota monitors), Toyota-issued technical service bulletins, and the correlating increase in warranty claims, as well as other sources. Still, Toyota never disclosed the Transmission Defect to consumers; rather, it actively conceals it.

---

[4]    Exhibit A, Tech-Tip T-TT-0758-24

[5]    *Id.*

[6]    Upon information and belief, Toyota and Aisin Corporation, and their affiliates and subsidiaries company, began development, manufacture, and testing of the Class Vehicles' Transmissions in 2016. Exhibits B and C.

CLASS ACTION COMPLAINT

00218260

BLOOD HURST & O' REARDON, LLP

12.   Despite its actual, exclusive knowledge, Toyota marketed, and continues to market, the Class Vehicles, and the Transmissions specifically, as safe and reliable.

13.   Toyota, however, failed to disclose the Transmission Defect to consumers, despite their knowledge that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.

14.   Toyota actively concealed and continues to conceal the true nature and extent of the Transmission Defect from Plaintiff and the other Class Members and has failed to disclose it to them before or after the time of purchase or lease.

15.   Had Plaintiff and the other Class Members known about the Transmission Defect, they would not have purchased or leased the Class Vehicles or would have paid substantially less for them.

16.   As a result of their reliance on Defendants' concealment/omissions, and its active concealment, Plaintiff and the other Class Members have suffered an ascertainable loss of money, property, and loss in value of their Class Vehicles.

17.   Despite notice of the Transmission Defect from, among other things, pre-production testing, consumer complaints, warranty data, and dealership repair orders, Toyota has not recalled the Class Vehicles to repair the Transmission Defect, replace the Transmission, offered Plaintiff and the other Class Members a suitable repair or adequate replacement free of charge, or offered to reimburse Plaintiff and the other Class Members the costs they incurred relating to diagnosing and repairing the Transmission Defect or for the value consumers' vehicles have lost as a result of the defect.

18.   Many owners and lessees of the Class Vehicles sought repairs for the Transmission Defect, but Toyota repaired or replaced the transmissions with the same defective parts. These actions are insufficient and exacerbate the problem by subjecting unsuspecting Class Members—who have been reassured their

1    Transmissions were fixed—to repeated transmission failures and an ongoing safety
2    risk.

3         19.    To date, Toyota has taken no action to correct the root cause of the
4    Transmission Defect in all Class Vehicles, despite symptoms appearing during the
5    limited warranty period.

6         20.    Under the warranties provided to Plaintiff and the other Class Members,
7    Toyota promised to repair or replace defective Transmissions and components arising
8    out of defects in materials and/or workmanship, such as the Transmission Defect, at
9    no cost to owners or lessors of the Class Vehicles. For illustrative purposes, Toyota
10   offers a 60-month or 60,000-mile Powertrain Warranty to cover "repairs needed to
11   correct defects in materials and workmanship of any component . . . supplied by
12   Toyota," including, *inter alia*, the Transmission, transaxle, torque converter, transfer
13   case, and all internal parts.[7]

14        21.    Toyota breached their express and implied warranties through which
15   they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose
16   for which they were sold; and (2) repair and correct manufacturing defects or defects
17   in materials or workmanship of any parts they supplied, including the Transmission
18   and related components.

19        22.    Because the Transmission Defect was present at the time of sale or lease
20   of the Class Vehicles, Toyota is required to repair or replace the Class Vehicles
21   pursuant to the terms of the warranty.

22        23.    Given Toyota's knowledge of this concealed safety-related design and/or
23   manufacturing defect and its refusal or inability to repair it—Toyota's attempt to limit
24   the applicable warranties with respect to the Transmission Defect is unconscionable
25   and causes them to fail their essential purpose.

26

27

28   [7]    *Id.*

BLOOD HURST & O' REARDON, LLP

00218260

24.     Toyota and their network of authorized dealers possess exclusive and superior knowledge and information regarding the Transmission Defect. Despite this, Toyota has failed to notify Plaintiff and the other Class Members of the Transmission Defect, who could not have reasonably discovered the defect through due diligence. Similarly, Toyota has failed to provide Plaintiff and the other Class Members with any effective fix or remedy for the Transmission Defect, despite voluminous customer complaints and the ongoing safety and reliability risk it has created.

25.     As a direct result of Toyota's wrongful conduct, Plaintiff and the other members of the Class have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair of the Transmission Defect; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; (4) diminished value of their vehicles; and/or (5) the price premium attributable to the purported safety and reliability of the Class Vehicles.

26.     Plaintiff and the other Class Members, therefore, assert claims against Toyota for fraud, breach of express and implied warranties, violation of statutory unfair and deceptive trade practices laws of California, and unjust enrichment. As alleged herein, Toyota's wrongful conduct has harmed owners and lessors of the Class Vehicles, and Plaintiff and the other members of the Class are entitled to damages and injunctive and declaratory relief.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class Member is of diverse citizenship from one Defendant, there are more than 100 Class Members nationwide, and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

28.     This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

BLOOD HURST & O' REARDON, LLP

00218260

7

29.     This court has jurisdiction over Defendants because they are California corporations registered to do business in California, conduct substantial business in this District and some of the actions which gave rise to the claims took place in this state; and products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed in this state in the ordinary course of business, commerce, trade, or use. Toyota is one of the largest automotive manufactures and sellers in the world. Toyota has, at all relevant times, conducted and continues to conduct business all over the country, including Plaintiff's state, California.

30.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants marketed, advertised, sold, and leased the Class Vehicles in this District; Defendants' actions have caused harm to Plaintiff and Class Members who resided in this District; and Defendants regularly conduct business in this District as they are subject to personal jurisdiction in this District.

## **PARTIES**

### **Plaintiff**

31.     Plaintiff Abdul Syed is a citizen of California and resides in Riverside County, California.

32.     Plaintiff Syed leased a new 2024 Toyota Tacoma TRD Sport from Larry Miller Toyota Corona in Corona, California on April 5, 2024. On or about April 6, 2024, Plaintiff Syed bought out the lease. Plaintiff Syed's Toyota Tacoma is a Class Vehicle equipped with the defective 8-speed automatic transmission.

33.     Prior to leasing his Class Vehicle, Plaintiff Syed reviewed Toyota's promotional materials, such as Toyota's website and the Monroney sticker, test drove the vehicle, and interacted with at least one sales representative without Toyota disclosing the Transmission Defect.

00218260

34.     Through his exposure and interaction with Toyota, Plaintiff Syed was aware of Toyota's uniform and pervasive marketing message of dependability and safety, which is a primary reason he leased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Toyota disclose to him the Transmission Defect.

35.     In April 2024, the Transmission Defect first manifested in Plaintiff Syed's vehicle with less than 100 miles on the odometer. Plaintiff Syed was operating his Class Vehicle under intended and foreseeable circumstances when the Transmission began exhibiting symptoms of the Transmission Defect without warning. Specifically, Plaintiff Syed was driving his vehicle on Greengate Street in Corona, California, when, as he approached a stop sign, the transmission experienced a harsh downshift and jerking between gears. Upon accelerating from the stop, there was a noticeable delay in acceleration, harsh engagement of the drive gears, and a jolt, as if the vehicle surged forward unexpectedly. The transmission continues to exhibit further issues with abrupt, forceful engagement of gears, jerking, lurching, and delayed acceleration. Plaintiff Syed's vehicle suffers from the Transmission Defect in both low-speed and high-speed driving scenarios, including multiple instances where his Class Vehicle failed to properly engage the driver gears, causing delayed acceleration and power when entering the freeway and attempting to merge with traffic. Since the first manifestation, Plaintiff Syed's vehicle has exhibited the Transmission Defect approximately ten to fifteen times under similar circumstances. As a result, Plaintiff Syed limits the use of his Class Vehicle due to his concerns regarding the safety and reliability of the vehicle.

36.     Plaintiff Syed's 2024 Tacoma is not subject to any technical service bulletins, special service campaigns, or recalls for the Transmission Defect, as further explained below. As such, Plaintiff Syed has been left without a remedy and, as a result of Toyota's conduct and the Transmission Defect, is continuously exposed to an increased risk of severe injury or death.

BLOOD HURST & O' REARDON, LLP

00218260

37.    Plaintiff Syed did not receive the benefit of his bargain. He leased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Transmission Defect has significantly diminished the value of Plaintiff Syed's Class Vehicle.

38.    Had Toyota Disclosed the Transmission Defect, Plaintiff Syed would not have leased or purchased his Class Vehicle, or certainly would have paid less to do so.

**Defendants**

39.    Defendant Toyota Motor North America, Inc. ("TMNA") is incorporated in California, with its headquarters located at 6565 Headquarters Dr., Plano, Texas 75024. TMNA is a wholly-owned subsidiary of Toyota Motor Corporation ("TMC"), the Japanese parent company, and is the corporate parent of Toyota Motor Sales, U.S.A., Inc. ("TMS"). TMNA oversees government and regulatory affairs, energy, economic research, philanthropy, corporate advertising and corporate communications for all of TMC's North American operations.

40.    Defendant Toyota Motor Sales U.S.A, Inc. ("TMS") is a California corporation headquartered in Plano, Texas. TMS is the U.S. sales and marketing division for TMC and TMNA, and it oversees sales and other operations across the United States. TMS distributes Toyota parts and vehicles, which are then sold through Defendants' network of dealers. Money received from the purchase of a Toyota vehicle from a dealership flows from the dealer to TMS.

41.    There exists, and at all times herein mentioned existed, a unity of ownership between TMC, TMNA, and TMS and their agents such that any individuality or separateness between them has ceased, making each the alter ego of the others. Adherence to the fiction of the separate existence of Defendants would, under the circumstances set forth in this complaint, sanction fraud or promote injustice.

BLOOD HURST & O' REARDON, LLP

00218260

42.    For example, upon information and belief, Defendants TMNA and TMS communicate with TMC concerning virtually all aspects of the Toyota products that TMNA and TMS distribute within the United States, including appropriate repairs for pervasive defects, and whether Toyota will cover repairs or replacements of parts customers claim to be defective. Toyota's decision not to disclose the Transmission Defect to Plaintiff or the Class, or whether to replace the Transmissions or defective and failed parts, was a decision made jointly by TMC, TMNA and TMS. Plaintiff believes that discovery will bear this out, but at this time will bring no claims against TMC.

43.    Toyota has 18 offices located in California—more than all other states combined. Toyota also owns and operates a manufacturing facility in Long Beach, California, which serves as the primary body parts supplier for all Tacoma trucks, including the Class Vehicles. Toyota's North American research and development arm is located in Gardena, California, where it conducts engineering design, vehicle evaluation, powertrain development and calibration, and regulatory affairs, and other business functions for Toyota vehicles marketed and sold in the United States.

44.    Toyota partially sells vehicles via communications authorized to be made by its dealers, including those relating to the Class Vehicles discussed herein. This includes authorizing Toyota dealers to distribute owner's manuals, informational brochures, warranty booklets, and other marketing and promotional material, all of which fail to disclose the Transmission Defect. Toyota jointly designs, determines the substance of, and affixes to its vehicles the window stickers visible on each now Toyota vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the Transmission Defect. These stickers were reviewed by Plaintiff the Class prior to purchasing the Class Vehicles. Toyota controls the content of these window stickers; its authorized dealerships have no input regarding their content. Vehicle manufacturers like Toyota are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the

11

Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq*. The Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale. Toyota, through its authorized dealers, has had the opportunity to disclose all material facts relating to the Class Vehicles, including the Transmission Defect.

45.    Toyota also operates a Customer Experience Center, the representatives of which are responsible for fielding customer complaints and monitoring customer complaints posted to Toyota or third-party websites: data which informs Toyota's operations, and through which Toyota acquires knowledge of defect trends in its vehicles.

46.    At all relevant times, TMNA and TMS acted as the authorized agent, representative, servant, employee and/or alter ego of TMC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Toyota vehicles in the United States, including substantial activities that occurred within this jurisdiction.

47.    At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Toyota brand name throughout the United States. Defendants and their agents designed, manufactured, and installed the defective Transmissions in the Class Vehicles. Defendants and their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

48.    At all relevant times, TMNA and TMS acted as an authorized agent, representative, servant, employee, and alter ego of TMC while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Toyota vehicles in the United States. TMNA and TMS render services on behalf of TMC that are sufficiently

important to TMC and its sale of vehicles in the United States that TMC would perform those services itself if TMNA and TMS did not exist. Upon information and belief, TMC controls the public name and brand of TMNA and TMS, and in consumer transactions, like those with Plaintiff and the proposed class, TMC's unified brand and logo serve as its, TMS's and TMNA's official seal and signature as to consumers.

49.    TMC operates TMNA and TMS with a unity of interest and owners such that TMNA are TMS are mere instrumentalities of TMC. TMC and TMNA engage in the same business enterprise and share common board members and employees. Upon information and belief, TMC has, and at all relevant times had, the contractual right to exercise and in practice has exercised control over the work of TMS and TMNA, including but not limited to the manner of Toyota Class Vehicles' marketing, the scope of written warranties, and representations made, and facts withheld from consumers and the public about the Transmission Defect.

50.    At all relevant times to this action, Defendants manufactured, distributed, sold, leased, an warranted the Class Vehicles under the Toyota brand name throughout the United States. Defendants and its agents designed, manufactured, and installed the defective Transmission and relating parts and components in the Class Vehicles. Additionally, Defendants developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matter relating to the Class Vehicles.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

51.    Toyota designs, manufactures, markets, and sells millions of vehicles worldwide under the Toyota and Lexus brand names. Toyota reported $258 billion of revenue in 2020 alone.[8]

52.    In 2023, Toyota sold 2,069,000 vehicles in the United States.

---

[8]    https://global.toyota/pages/global_toyota/ir/financial-results/2023_4q_presentation_2_en.pdf (last visited August 27, 2024).

BLOOD HURST & O' REARDON, LLP

53.    Toyota designs, manufactures, markets, warrants, and sells hundreds of thousands of Class Vehicles nationwide, all of which are equipped with the same or substantially similar Transmissions.

54.    All Class Vehicles are equipped with an engine and either an Aisin-Toyota AL80E (two-wheel drive), AL80F (four-wheel drive), or L580F (four-wheel drive hybrid) 8-speed automatic transmission, depending on whether the vehicle is two or four-wheel drive. Upon information and belief, the Transmissions are substantially similar and for purposes of this lawsuit, materially identical in all relevant respects.

55.    The Transmissions serve a critical role in the function of Class Vehicles, transferring engine rotational power to the wheels. The automatic transmission is mounted to the engine via the torque converter and utilizes a series of components, each of which is monitored and controlled by the Transmission Control Module.

56.    The Class Vehicles' Transmissions are electronically controlled eight-speed transmissions, meaning they have eight forward gears as well as a reverse gear.

57.    During engine operation, the torque converter rotates, drawing transmission fluid into its housing and directing it onto the blades of a turbine. This fluid movement causes the turbine to rotate, thereby transferring power to the transmission.

58.    The torque converter uses hydraulic pistons to compress the clutch packs, which in turn engage the planetary gear sets, allowing the transmission to shift into the correct gear.

**A.    The Transmission Defect**

59.    The Class Vehicles suffer from a dangerous defect, placing Plaintiff and Class Members, as well as others on the road, at increased risk of severe injury or even death.

60.    Due to the torque, friction, heat, and other characteristics generated by the Class Vehicles during normal operation, combined with the material, tensile

Blood Hurst & O' Reardon, LLP

14

CLASS ACTION COMPLAINT

strength, and other design or manufacturing characteristics of the Transmissions' internal components, the Transmission suffers premature degradation and failure.

61. The Transmission Defect presents to the driver as rough gear shifting, the inability to engage certain gears, and a reduced or total loss of motive power, all occurring without any prior signs or warnings.

62. The Class Vehicles' Transmissions and its related components are not adequately designed or manufactured to assure safe, reliable transportation. The defect occurs under intended operating conditions.

63. The Transmission Defect strands Class Members and takes control of the Class Vehicle away from the driver – as reported in voluminous owner complaints submitted to both NHTSA and online forums, which Toyota monitors to track product performance.

64. The Transmission Defect exists in all Class Vehicles and can strand owners during and after the warranty period. It is not remediable by any repairs performed by Toyota, its dealers, or agents.

65. The nature and severity of the Transmission Defect makes the Class Vehicles unreliable, unsafe, and unfit for their ordinary and intended purposes, particularly in high torque applications, as is the case with the Class Vehicles here.

66. Plaintiff and Class Members purchased or leased their Class Vehicles for the purpose, and with the understanding of receiving safe, reliable transportation, along with the ability to off-road, tow, and haul heavy loads.

67. As a result of the Transmission Defect, owners and lessors of Class Vehicles must either cease driving their Class Vehicles (the purpose for which they purchased them), or else risk a total transmission failure. Total transmission failure invites risk of serious bodily injury or property damage.

68. The Transmission Defect substantially impairs the use, value, and safety of the Class Vehicles and renders them substantially less drivable, safe, useful, and valuable than they would be without the defect.

BLOOD HURST & O' REARDON, LLP

00218260

69.    On July 8, 2024, Toyota released Technical Service Bulletin ("TSB") T-SB-0058-24 for model year 2024 Toyota Tacoma trucks equipped with a RC60F 6-speed manual transmission and transaxle. Toyota noted that a customer's vehicle "may exhibit a condition where the vehicle is unable to shift into second, fourth, and/or sixth gear, but is able to shift into all other gears."[9] Toyota offered to replace the manual transmission in the aforementioned vehicles. In contrast, Toyota has failed to release any recall or TSB for the Class Vehicles equipped with the 8-speed automatic transmission.

70.    However, on July 15, 2024, Toyota acknowledged the existence of the Transmission Defect in the Class Vehicles when it issued Tech Tip, T-TT-0758-24, titled "Torque Converter Required During Transmission Replacement with Debris", for all 2024 Toyota Tacoma trucks equipped with an 8-speed automatic transmission.[10] In the communication, Toyota stated "[w]hen replacing the transmission, if debris is found in the pan, it is required to also replace the torque converter. If the torque converter is not replaced, then the remaining debris may be introduced into the replacement transmission . . . Replace the torque converter and transmission using the appropriate repair manual."[11]

71.    On September 9, 2024, Toyota confirmed the existence of the Transmission Defect in the Class Vehicles when it issued T-SB-0076-24 for all model year 2024 Toyota Tacoma trucks equipped with an automatic transmission.[12] In the communication, Toyota stated "[s]ome model year Tacoma vehicles may exhibit a MIL ON condition with one or more of the following Diagnostic Trouble Codes (DTCs) present:

---

[9]    Exhibit D, T-SB-0058-24, dated July 8, 2024.

[10]    Exhibit A, T-TT-0758-24, dated July 15, 2024.

[11]    *Id.*

[12]    Exhibit I, T-SB-0076-24, dated September 9, 2024.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

- P07407F - Torque Converter Clutch Actuator Stuck Off
- P079571 - Pressure Control Solenoid "C" Actuator Stuck
- P08SA71 - Pressure Control Solenoid "l" Actuator Stuck
- P271371 - Pressure CM1101 Solenoid "O" Actuator Stuck
- P280771 -Pressure Control Solenoid "G" Actuator Stuck
- P281671 - Pressure Control Solenoid "W" Actuator Stuck

72.    The automatic transmission assembly and torque converter need to be replaced to address this condition."[13]

73.    By issuing T-TT-0758-24 and T-SB-0076-24, Toyota has confirmed the existence of the Transmission Defect in the Class Vehicles, yet Toyota has failed to release any recall or separate TSB to address the root cause of the defect or provide Class Members with an effective remedy.

74.    Moreover, any repairs suggested by this Tech Tip, or performed by Toyota, do not remedy the root cause of the Transmission Defect, as the replacement parts were not redesigned, as confirmed by no change in the part numbers.

75.    In fact, Toyota's proposed repair is belied by the numerous online complaints referenced below, where Class Members report that their transmissions were replaced entirely due to extensive internal damage, only for their Class Vehicles to be disabled by the Transmission Defect again after repair or to exhibit the same conditions present before the initial failure.

76.    Moreover, Toyota has not advised Class Members to cease driving their Class Vehicles until an adequate repair or replacement is available, despite the attendant serious safety risks. Nor has Toyota offered to reimburse Plaintiff or the other Class Members for the benefit-of-the-bargain they did not receive.

77.    The root cause of the Transmission Defect is not isolated and cured with Toyota's installation of similarly defective replacement parts.

---

[13]    *Id.*

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

78.    Toyota's failure and inability to adequately repair the Transmission Defect, combined with its failure to advise Plaintiff and Class Members to stop driving their Class Vehicles, leaves the Plaintiff and Class Members, vehicle occupants, and others on the road at risk of serious bodily harm and even death.

79.    Plaintiff and Class Members do not reasonably expect Toyota to conceal a defect or known safety hazard in the Class Vehicles. Plaintiff and Class Members had no reasonable way of knowing that the Class Vehicles contained the Transmission Defect, which was defective in materials, workmanship, design, and/or manufacturing and posed serious safety hazards to Plaintiff, Class Members, and the general public.

80.    As a result of Toyota's manufacture and design of the Transmission Defect in the Class Vehicles, and Toyota's material misrepresentations and omissions regarding the standard, quality, or grade of the Class Vehicles and/or the existence of the Transmission Defect, Plaintiff and Class Members have been placed at risk for injuries and potentially death in addition to suffering actual damages, including but not limited to, out of pocket expenses, loss of time, loss of use of their Class Vehicles, and diminished value of their Class Vehicles.

**B.    Toyota's Knowledge of the Transmission Defect and Associated Safety Risks**

81.    Toyota fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiff and Class Members the Transmission Defect in the Class Vehicles, even though Toyota knew or should have known of the design and/or manufacturing defects in the Class Vehicles.

82.    Toyota became aware of the Transmission Defect through sources not available to Plaintiff and the other members of the Class, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Toyota's network of dealers and directly to Toyota, aggregate warranty data compiled from Toyota's network of dealers, testing conducted by Toyota in

BLOOD HURST & O' REARDON, LLP

response to consumer complaints, repair order and parts data received by Toyota from Toyota's network of dealers and suppliers, its investigation and field analysis of the Transmission Defect.

83.    Despite its exclusive, actual knowledge, Toyota has not recalled the Class Vehicles or provided an adequate remedy for Plaintiff and all other Class Members.

### 1.    Pre-Release Testing

84.    Toyota knew or should have known about the Transmission Defect from the testing performed on the Transmissions and its' components. Prior to the sale of any of the Class Vehicles, Toyota–like any other reasonable Original Equipment Manufacturer (OEM) seeking to manufacture and sell vehicles on the U.S. market–completed a multitude of analyses and testing that exposed the existence of the Transmission Defect.

85.    Toyota and its suppliers, perform various pre-production testing on new vehicle components, including most notably Failure Modes and Effects Analysis ("FMEA")[14] and Design Validation Plan and Report ("DVP&R").

86.    Toyota and its suppliers performed these tests, and others, on the Class Vehicles and, if performed with due care, each of these tests demonstrated that the relevant systems or components in the Class Vehicles would lead to failure of the Transmissions.

---

[14]    FMEA is an integral part of the International Organization for Standardization (ISO) and International Automotive Task Force (IATF) technical specifications for quality management, such as ISO 9001 and ISO/TS 16949. ISO/TS 16949 is the global benchmark for an international fundamental quality management system (QMS) for the automotive industry, jointly produced by the IATF and the Japanese Automobile Manufacturers Association (JAMA), of which Toyota is a member. *See* http://www.jama.or.jp/english/links/member-manufacuturers.html; *see also* https://www.aiag.org/docs/default-source/Quality-/quality-management-systems-and-quality-core-tools-(global-benchmarks).pdf?sfvrsn=0.

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

87.    FMEA tests methods or modes by which a particular component might fail. It examines the design of each component, the assembly of the part, and whether use in various manners would cause the part or system to fail. For example, in testing the systems at issue here, FMEA testing would explore, among other things, how and under what conditions the Transmissions and their components could fail, how likely failure was under different conditions, and how likely each condition tested was to occur.

88.    The purpose of the FMEA is to define, based on known and established engineering facts like those asserted by Defendants, potential risks of failures and rank them by severity, likelihood and ability to detect failure. Any conditions resulting in failure, like those associated with the Transmission Defect would result in a "high risk" priority and draw additional and more extensive analysis and validation testing during the FMEA and DVP&R phases. Given the reports of Transmission failures after sale, these processes were designed to show the various modes of failure caused by the Transmission Defect and confirm what Defendants already knew about the Transmission Defect.

89.    The DVP&R phase includes an extensive battery of tests and other work necessary to validate the robustness of any design, and includes three basic types of testing: bench scale, dynamometer, and vehicle/field testing. This testing is discussed below.

90.    Bench scale testing is component-specific and establishes a strict set of specifications and guidelines to ensure that the component will operate reliably and durably in foreseeable operating conditions. During this phase of testing, Defendants' Transmission was "bench tested," that is, set up on various machinery to simulate certain operating extremities and conditions to confirm whether it meets the necessary specifications and guidelines set by the supplier in coordination with Defendants. Discovery is expected to reveal that Defendants received the detailed results of the bench testing and resulting Technical Control Documents (TCDs) which outline the

BLOOD HURST & O' REARDON, LLP

operating limitations of Defendants' Transmission along with the potential risks associated with installation in the Class Vehicles, including the Transmission Defect.[15] Similarly, discovery is expected to show that bench testing of the Transmissions confirmed what Defendants already knew about its design choice or its workmanship and materials—that the Transmissions fail to operate as intended and prematurely fails.

91.    Dynamometer testing is one of the most important types of testing to ensure durability and performance of the powertrain and its components. In the dynamometer test, the powertrain is operated under extreme conditions such as maximum temperatures, RPMs, or excessive vibration. Dynamometer testing is intended to demonstrate powertrain robustness and reveal necessary improvements or flaws, such as the Transmission Defect. Discovery is expected to confirm that dynamometer testing revealed the Transmissions were poorly designed and manufactured, suffered from premature degradation, underperformance, and, ultimately, catastrophic failure.

92.    Toyota and its suppliers also performed computer and real-world simulations of the systems, including in extreme conditions, to confirm they are meeting the design goals. Toyota tested the Transmissions in actual vehicles, both prototype vehicles and pre-production line vehicles.  In these tests, vehicles are driven through a full range of conditions and extremities that are encountered once a vehicle is sold to the public. These vehicle-specific development tests include mapping extreme operating conditions, which are the kinds of modes that manifest the Transmission Defect.

---

[15]    Defendants are in the exclusive possession of the specific information regarding each phase of testing, including the exact tests conducted and reports received from the testing. Plaintiff makes this allegation based on reasonable investigation of Defendants' procedures and the nature of the Transmission Defect.

BLOOD HURST & O' REARDON, LLP

00218260

93.    Through the rigors of these three phases of DVP&R testing, Defendants' Transmissions were exposed repeatedly to conditions that cause the Transmission Defect to manifest.

94.    Defendants admit they perform extensive pre-release testing of the Class Vehicles before they are sold.[16]

95.    During this testing, Toyota learned that the Class Vehicles' Transmissions grossly underperform and suffer internal component damage and failure. However, due to the costs of redesigning and fixing the Transmissions, Toyota opted to conceal the Transmission Defect.

96.    Toyota knew or should have known that the Transmission Defect was material to owners or lessees of the Class Vehicles and that Plaintiff and Class Members could not reasonably discover the Transmission Defect on their own prior to purchasing or leasing the Class Vehicles.

97.    Toyota had and continues to have a duty to fully disclose the true nature of the Transmission Defect to Plaintiff and Class Members, among other reasons, because the Transmission Defect poses an unreasonable safety hazard; because Toyota had and has exclusive knowledge or access to material facts about the Class Vehicles' Transmissions that were and are not known to or reasonably discoverable by Plaintiff and the other members of the Class; and because Toyota has actively concealed the Transmission Defect from its customers at the time of purchase or repair and thereafter.

98.    Specifically, Toyota (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities

---

[16]    https://pressroom.toyota.com/a-quarter-century-of-sand-snakes-and-speed/; https://pressroom.toyota.com/toyota-adds-the-arizona-mobility-test-center-to-its-proving-grounds-for-industry-availability-as-a-vehicle-development-resource/; https://pressroom.toyota.com/2017-tmna-rd-york-township-michigan-expansion-grand-opening-shinichi-yasui/

Blood Hurst & O' Reardon, LLP

of the Class Vehicles, including the Transmission Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their Transmissions were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and actively concealed the fact that the Class Vehicles and their Transmissions were defective, despite the fact that Toyota learned of the Transmission Defect before it placed the Class Vehicles in the stream of commerce.

99.    The Transmission Defect and its associated safety risks were concealed and actively suppressed in order to protect Toyota's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and brand disengagement. Consumers were misled into believing their Class Vehicles had different qualities than what they purchased or leased, and as a result, were deprived of economic value, the benefit of their bargain, and overpaid for their Class Vehicles.

100.    At all relevant times, in promotional materials, advertisements, and other representations, Toyota and its authorized Dealers maintained that the Class Vehicles were safe, reliable, and made no reference to the Transmission Defect. Plaintiff and Class Members, directly, and indirectly, were exposed to, saw or heard such promotional materials and advertisements prior to purchasing or leasing the Class Vehicles. Indeed, these misleading representations about the Class Vehicles' reliability and safety were material to Plaintiff's and Class Members' ultimate decision to purchase or lease the Class Vehicles.

101.    Notwithstanding Toyota's superior and exclusive knowledge of the Transmission Defect, it failed to disclose the Transmission Defect to Plaintiff and Class Members at the time of purchase or lease of the Class Vehicles and made no mention of the Transmission Defect in its advertisements, promotional materials, and other representations.

00218260

BLOOD HURST & O' REARDON, LLP

## 2.    Consumer Complaints

102.    Federal law requires Toyota to monitor defects that can cause a safety issue and report them within five (5) days to NHTSA.[17] Therefore, Toyota regularly monitors NHTSA complaints to meet reporting requirements under federal law. Toyota, therefore, has knowledge of the Transmission Defect due to the numerous consumer complaints, such as those made to NHTSA, as well as by other means.

103.    Consumers who purchased or leased Class Vehicles from Toyota, as well as owners and lessees of pre-Class Toyota Tacoma trucks, have filed a significant number of complaints with the National Highway Traffic Safety Administration ("NHTSA"), reporting and detailing the defect in Toyota Tacoma Transmissions.

104.    Toyota knew or should have known about the Transmission Defect and its associated risks through the numerous consumer complaints filed with NHTSA as early as 2020. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). The publicly filed complaints concerning these earlier model year Toyota Tacoma vehicles describe similar, if not identical, transmission-related issues that result in the same safety dangers and reliability concerns present in the Class Vehicles due to the Transmission Defect.

105.    The following example complaints filed by consumers with NHTSA demonstrate that the Transmission Defect is a widespread safety hazard that plagued pre-Class vehicles and continues to plague the Class Vehicles:[18]

> CAR HESITATES WHEN NEEDING TO ACCELERATE RAPIDLY. WHILE SLOWING DOWN THE CAR FEELS LIKE IT IS PUSHING ,NOT DOWN SHIFTING FAST ENOUGH. THE DIFFERENTIAL BANG AT TIME WHEN COMING TO A STOP, IT SEEMS LIKE IT IS NOT DISENGAGING. I THINK THERE IS A PROGRAMMING ISSUE THAT TOYOTA IS NOT ADMITTING TO. I ALSO HEARD THAT THERE IS A BLOWER ISSUE. THE TRANSMISSION

---

[17]    *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

[18]    All NHTSA complaints cited herein are verbatim copies of the complaints accessible on NHTSA's website. All typographical or grammatical errors are original.

BLOOD HURST & O' REARDON, LLP

DISENGAGES AT DIFFERENT SPEEDS WHEN YOU GO TO ACCELERATE THEN DON'T AND THEN DO. CAR GOES INTO NEURTAL HUNTING FOR A GEAR. (2016 Toyota Tacoma; NHTSA ID: 1639990; Compliant Date: 1/23/2020)

TRANSMISSION SLIPS WHEN SHIFTED FROM PARK TO DRIVE OR REVERSE TO DRIVE. HAS A 1-3 SECOND DELAY. IN ADDITION THIS SLIP MOTION CREATED A LOUD GEAR CRANKING NOISE AS I TRIED TO ACCELERATE ON A U-TURN. THE TRUCK DID NOT MOVE OR SHIFT DESPITE HEARING THE ENGINE ACCELERATE ACCOMPANIED BY THE METALLIC GEAR-LIKE GRIND SOUND. SOUND VERY SIMILAR TO A STICK CAR WHEN YOU TRY TO ENGAGE A SHIFT WITHOUT THE CLUTCH (BUT MY TRUCK IS 2016 AUTOMATIC TRD-SPORT). LASTLY, WHEN TAKING SPEED BUMPS OR HARD SHIFTING MOTION (UP-DOWN) YOU CAN HEAR THE SUSPENSIONS MAKE A LOUD CLANK NOISE AS THE TRUCK SHIFTS IN THE SPEED BUMP MOTION. (2016 Toyota Tacoma; NHTSA ID: 1650056; Compliant Date: 2/28/2020)

OFF-ROADING, RESTARTED VEHICLE AFTER A STOP. CHECK ENGINE LIGHT CAME ON AS WELL AS TRAC OFF ILLUMINATED. TRIED TO DRIVE FORWARD AND TRUCK STALLED AND MESSAGE SAID HIGH TRANSMISSION TEMP. GOGGLED ISSUE TO DISCOVER A RECALL FOR CRANK POSITION SENSOR FAILURE. LOOKED UP MY VIN AND I DON'T HAVE THAT RECALL ALTHOUGH I HAVE THE STATED YEAR AND MODEL. HAD THIS HAPPENED WHILE DRIVING ON ROAD IT COULD HAVE CAUSED AN ACCIDENT. (2016 Toyota Tacoma; NHTSA ID: 1658960; Compliant Date: 4/19/2020)

AFTER DRIVING AT HIGHWAY SPEEDS FOR AN EXTENDED PERIOD OF TIME, THE MANUAL TRANSMISSION GETS STUCK IN GEAR AND REQUIRES MUCH MORE FORCE THAN USUAL TO PUT THE GEARBOX INTO NEUTRAL.  *TR. (2016 Toyota Tacoma; NHTSA ID: 1666741; Compliant Date: 6/3/2020)

After starting the truck and idling for any length of time, I place my foot on the brake and shift into Reverse or Drive.  The truck almost leaps if I don't keep my foot on the brake. There is a noticeable pause many times, so it seems to be electronically controlled transmission.  I have read that dealerships can Flash the ECU module and it will resolve it, but I do not

Blood Hurst & O' Reardon, LLP

00218260

have any "unresolved recalls" at this time. (2016 Toyota Tacoma; NHTSA ID: 1751301; Compliant Date: 6/10/2021)

I brought my truck into Miller Toyota of Anaheim due to a violent shuddering and acceleration at about 40 to 50 mph. This could have caused driver to lose control and injure themselves, passengers, and other drivers on the road. Dealership diagnosed the problem as a bad torque converter in the transmission and said it would cost about $3200.00 to repair. Couldn't afford that so I took vehicle to an independent repair shop and they notified me that there was a Toyota Service Bulletin that addressed this concern and that they would have to do a complete reprogramming update of Transmission Control Module.   I haven't had any issues since this was done but the dealership should have been aware of this problem which could be potentially fatal. There were no warning lamps, messages or other symptoms prior to this failure or during the failure. (2016 Toyota Tacoma; NHTSA ID: 1813472; Compliant Date: 5/20/2022)

My 2016 Toyota Tacoma has had multiple oil leaks in the timing cover. The dealer has already fixed this issue twice and the timing cover is currently leaking oil. This leak is expensive to fix because it involves removing the engine and the transmission to properly seal the timing cover.  This is a know defect that poses a serious safety concern as the oil leak may go from a small leak to a large leak quickly, causing the engine to fail. Additionally the air pressure from driving can cause the oil to end up everywhere which can lead other components to degrade and fail.  Because the fix is so complex, the process to remove and reinstall the engine and transmission may result in other mistakes. During one of the attempts to fix the issue, the dealer forgot to replace an engine bolt and forgot to hook up a vent hose.  The cost to fix this issue is so high that it makes it too expensive for many to fix. (2016 Toyota Tacoma; NHTSA ID: 1904795; Compliant Date: 6/27/2023)

Truck had to be abandoned after I attempted to start it and the brake pedal was stiff and the ignition would not allow starter to function. Dashboard message indicated a brake problem with transmission interlock. The next day, after viewing a U-Tube video on the problem (same make/model/year) I held the starter button in for 12-15 seconds with no foot on the brake. The engine started but the transmission remained locked in Park. Tow truck operator was able to release the shifter using an access port and screwdriver and found that he could drive it up onto the inclined platform. Once in place on the platform he shifted to Park

and found it was again locked.   This issue disabled the truck in a traffic area where it could not be started or shifted into Neutral to move it...a dangerous situation. (2016 Toyota Tacoma; NHTSA ID: 1925421; Compliant Date: 9/8/2023)

ON ONE OF MY SERVICES I MENTIONED THAT I FEEL THAT THE STANDARD TRANSMISSION WAS NOT SHIFTING INTO 2ND GEAR VERY EASY. BECAUSE IT'S NEW TO ME AND IT ALSO HAS SOME KIND OF ANTI ROLL I THOUGHT MAYBE JUST WASN'T WORKING THE PEDAL FAR ENOUGH OR JUST MISSING IT BUT IT DIDN'T SEEM SMOOTH. MY OTHER CONCERN WAS ABOUT SHIFTING OR THY LACK OF ENGAGING IN FOUR WEEK DRIVE. TOYOTA AGREED THAT THERE WAS A PROBLEM. THEY REPLACED THE TRANSMISSION AND SAID HERE YOU GO. UNFORTUNATELY THE SAME PROBLEMS ARE STILL OCCURRING. MY TRUCK HAS BEEN AT MAUI TOYOTA FOR MONTHS NOW. THEY ARE NOW SAYING THAT THEY REPLACED THE TRANSMISSION AND THEY AGREE THAT IT'S NO BETTER BUT THA IT'S IN RUNNING CONDITION. I HAVE BEEN TOLD TO ALL SERVICE HONOLULU WHERE I HAVE BEEN BASICALLY LEFT BLIND. I UNDERSTAND THAT THERE IS A CRITICAL SITUATION GOING ON SO I FIGURED THAT HAS PART TO DO WITH NOT GETTING ANY UPDATES. YESTERDAY MAUI TOYOTA CALLS AND INFORMED ME THAT THEY WILL HAVE MY TRUCK TOWED ON TUESDAY. VERY UNPROFESSIONAL AND HORRIBLE CUSTOMER SERVICE TO SAY THE LEAST.  I DON'T WANT A NEW TRANSMISSION THAT ACTS LIKE ONE THEY SAID WAS NOT RIGHT. I WANT A PROPER FUNCTIONING VEHICLE THAT WILL LAST THAT'S WHY THIS IS MY FOURTH TOYOTA TRUCK. (2017 Tacoma; NHTSA ID: 1657902; Complaint Date: 4/10/2020)

TL* THE CONTACT OWNS A 2017 TOYOTA TACOMA. THE CONTACT STATED WHILE DRIVING 70 MPH, THERE WAS AN ABNORMAL SOUND COMING FROM THE ENGINE WITH GRAY SMOKE COMING FROM THE EXHAUST TIPS. THE CONTACT ATTEMPTED TO ACCELERATE HOWEVER, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT PULLED OFF THE ROADWAY AND THE VEHICLE STARTED SHAKING. THE CONTACT IMMEDIATELY TURNED OFF THE VEHICLE. THE VEHICLE WAS TOWED TO HIS RESIDENCE. AN INDEPENDENT

BLOOD HURST & O' REARDON, LLP

00218260

MECHANIC INSPECTED THE VEHICLE AT THE RESIDENCE AND INFORMED HIM THAT A SECTION OF THE TRANSMISSION TRANSFER CASE WAS MISSING. THE CONTACT HAD THE VEHICLE TOWED TO ROCHESTER TOYOTA (48 FARMINGTON RD, ROCHESTER, NH 03867) WHERE HE WAS INFORMED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 80,000. (2017 Tacoma; NHTSA ID: 1696591; Complaint Date: 10/1/2020)

OCCASIONALLY WHEN DRIVING THE SPEEDOMETER DOES NOT SHOW THE ACCURATE SPEED SUCH AS THE SPEEDOMETER SHOW 0 WHEN GOING 30MPH. THERE IS ALSO A WEIRD METAL CLANKING NOISE WHICH SOUNDS LIKE ITS COMING FROM THE TRANSMISSION AND SOUNDS LIKE ITS TRYING TO SHIFT GEAR WHILE IN REVERSE OR DRIVE. ALSO THE AIR CONDITIONING FAN MOTOR HAS CRACKED AND WHEN TURNED ON SOUNDS LIKE A MOTORCYCLE REVING IT'S ENGINE. (2017 Tacoma; NHTSA ID: 1699058; Complaint Date: 10/13/2020)

TRANSMISSION WHEN IN COLD WEATHER. HAS A VERY SLIGHT THUMP WHEN COMING TO A STOP AS IF THE TRANSMISSION IS NOT SHIFTING DOWN SMOOTHLY IN GEARS. YOU SOMETIMES HEAR AND FEEL THIS THUMB WHEN DRIVING AROUND CITY STREETS . NOT AS MUCH AS WHEN THE WEATHER IS COLD OR AT STARTUP. (2017 Tacoma; NHTSA ID: 1706026; Complaint Date: 11/12/2020)

I TOOK MY TOYOTA (WHICH IS A MANUAL TRANSMISSION) THROUGH A CAR WASH PARKED IT AT HOME DIRECTLY AFTER. WENT TO DRIVE IT 24 HOURS LATER AND THE EMERGENCY BRAKE WOULD NOT DISENGAGE. I HAD TO HAVE IT TOWED TO DEALERSHIP. THIS HAD HAPPENED AT LEAST TWICE THAT I WAS ABLE TO UNLOCK THE BRAKE MYSELF BY MANUAL ROCKING OF THE VEHICLE THROUGH THE USE OF 1ST GEAR AND REVERSE. I JUST HAD MY VEHICLE TOWED FOR THE SECOND TIME AFTER ATTEMPTING TO UNLOCK IT WITHOUT DEALERSHIP HELP. IT UNLOCKED SOMEWHAT VIA THE METHOD I HAVE USED

CLASS ACTION COMPLAINT

BEFORE.  IT IS NOW DRIVING LIKE THE BRAKE IS STILL TRYING TO ENGAGE EVEN THOUGH THE HANDBRAKE IS NOT ENGAGED. (2017 Tacoma; NHTSA ID: 1722197; Complaint Date: 11/12/2020)

EVERY SO OFTEN I HEARD A BANG COMING FROM THE DRIVETRAIN WHILE I'M DRIVING AND ALSO WHEN I PUT THE TRUCK ON REVERSE THE SOUND IT'S LOUD. I DON'T KNOW IT'S A TRANSMISSION PROBLEM OR THE JOINTS WITH THE DIFFERENTIAL. BUT IT'S GETTING BAD. ALSO I HAVE PROBLEMS WITH THE CHARGING SYSTEM AND IT WAS BROUGHT IN AND THE DAY THERE IS NO PROBLEM BUT FOR SOME REASON SOME TIMES LIGHTS WILL COME UP OUT OF THE BUE. (2017 Tacoma; NHTSA ID: 1731481; Complaint Date: 3/6/2021)

I have been having several intermittent issue with the automatic transmission on my 2017 Tacoma TRD off Road with 43000 miles. Among them are as follows: It fails to shift correctly (hunting for gears) on the highway and hesitates to accelerate when needed, Also the transmission sometimes has a delayed engagement when putting it into reverse or drive from a standstill. The engine will rev up like it was in neutral then abruptly catch the reverse gear causing a loud and disturbing ΓÇ£BANGΓÇ¥ and even some tire spin on the pavement. I also intermittently experience a loud ΓÇ£CLUNKΓÇ¥ when slowing down to a stop in traffic as if the transmission is not downshifting properly from the higher gears to the lower ones and is forced to come to an abrupt halt. The dealer has performed a software update but this has not helped. The dealer also cannot replicate these problems because the issues are intermittent. I understand that a lot of 3ΓÇÖrd generation Tacoma owners are experiencing the same exact issues but it seems that Toyota is not issuing a recall for some reason. I believe this is a potential safety hazard and should be addressed. (2017 Tacoma; NHTSA ID: 1750058; Complaint Date: 6/3/2021)

The contact owns a 2017 Toyota Tacoma. The contact stated that after shutting off the vehicle with the push-button keyless ignition, the vehicle was parked inside of the garage with the garage door remaining opened and the contact exited the vehicle. When the contact came back to the garage, he noticed that the vehicle was missing as it had reversed down the driveway inadvertently while the engine was off. However, the transmission gear shifter was on the drive position. The vehicle had

BLOOD HURST & O' REARDON, LLP

00218260

crashed into two trees in the woods. No police report was filed. The vehicle was taken to a body shop and remained at the body shop, waiting for repairs to the front and rear passenger side doors, rear windshield, rear fender, and passenger side mirror. The dealer and manufacturer were not made aware of the failure. The failure mileage was approximately 48,000. (2017 Tacoma; NHTSA ID: 1767131; Complaint Date: 9/9/2021)

Transmission line was described by two auto mechanics (one from a Toyota dealership) as ΓÇ£rusted outΓÇ¥ and ΓÇ£porousΓÇ¥, ΓÇ£low pressure/fluidΓÇ¥ and ΓÇ£needs to be fixedΓÇ¥. I was totally unaware of the issue until I had to get my AC recharged. Note: this is a 2017 truck with 82,000 miles driven in Massachusetts. No warning lights went off. (2017 Tacoma; NHTSA ID: 1907190; Complaint Date: 7/7/2023)

The Tacoma still has only 10,000 original miles. We yearly replace the oil when we have our annual vehicle inspection. The truck has been trouble since the beginning. Early on I noticed when going downhill, the automatic transmission seems to slip when applying the gas. I have taken the truck back to the dealer in Kona to be told that it is not part of the rear end differential recall some years ago. I asked them to make a notation of this should the transmission or rear end differential fail in the future. Recently, we received an informational letter from Toyota regarding something about a possible faulty high pressure fuel pump. I made an appointment at the dealer and since I was there asked them for tire rotation, oil change and annual vehicle inspection. I explained to the service writer that I still believe there is a rear end or transmission problem. At first, she said, the recall was never done and later said it was done. More importantly, I have been smelling gasoline when I exit the truck although I see no visible fuel on the ground. I believe that this is related to the fuel pump issue which I received the letter from you. I was told several hours after I dropped off the truck that the fuel smell was not related to the letter I received. (2017 Tacoma; NHTSA ID: 1975700; Complaint Date: 3/18/2024)

2018 TACOMA TRD SPORT MANUAL TRANSMISSION - THIS HAS BEEN GOING ON SINCE DAY 1 - ENGINE HESITATION IN 1ST AND MOST NOTICEABLE IN SECOND GEAR.   THE TRUCK HESITATES AND SURGES DURING LIGHT AND MODERATE ACCELERATION - FEELING LIKE AN EXTREME LEAN RUNNING CONDITION.   THIS PUTS THE DRIVER AND OTHER PEOPLE AROUND YOU AT RISK WHEN PULLING OUT INTO

BLOOD HURST & O' REARDON, LLP

TRAFFIC OR HIGHWAY.    IF YOU SHIFT A TOUCH EARLY INTO
SECOND GEAR THE TRUCK OCCASIONALLY BOG ( STARVE
FOR FUEL )HEAVILY - WHERE YOU MUST EITHER BE
PATIENT, SLIP THE CLUTCH PRESS ON THE ACCELERATOR
HARDER, OR DOWNSHIFT.    THE HESITATION IS THERE ALL
THE TIME AND MORE NOTICEABLE WITH ANY LOAD UP ANY
INCLINE.    THIS IS DANGEROUS AND THE DRIVER MUST BE
PREPARED AT ALL TIMES TO DOWN SHIFT, SLIP THE CLUTCH,
AND MUST KNOW ABOUT THE HESITATION.    MY CO-
WORKERS AND FRIENDS HAVE DRIVEN WITH ME AND CAN'T
BELIEVE TOYOTA HASN'T FIXED IT YET.    MY SON CAME
HOME FROM DRIVING IT - SAYING ITS HESITATING
SEVERELY.    THIS HAS BEEN GOING ON SINCE DAY 1 AND
GETTING WORSE.    *TR. (2018 Tacoma, NHTSA ID: 1670675;
Complaint Date: 6/22/2020)

IN AUGUST 2018, I    PURCHASED NEW,    A 2018 TOYOTA
TACOMA SR5, 4 DOOR, 2 WHEEL DRIVE, AUTOMATIC
TRANSMISSION.            THE            TRANSMISSION
JERKS/DELAYS/STAGGERS AT SPEEDS OF MID-30'S, MID-40'S,
AND AROUND 65 MPH.  THIS STARTED AROUND 8000 MILES.
OCCURS WITH OR WITHOUT CRUISE CONTROL ON.  IT HAS
BEEN TO THE DEALER FOR 8 ASSESSMENTS OR REPAIRS FOR
THIS ISSUE.    RECENTLY, THE TRANSMISSION DID NOT
CHANGE GEARS UNTIL 4000 RPMS WHILE I WAS PULLING A
SMALL UTILITY TRAILER.  WE HAD TO TRAVEL AT LESS
THAN SAFE HIGHWAY SPEEDS UNTIL PULLING OVER.  THIS
ALMOST RESULTED IN AN ACCIDENT.  THE PROBLEM IS
CONSTANT AND REPRODUCIBLE.  THE SERVICE MANAGER
AT THE LOCAL DEALERSHIP CLAIMS THIS HAPPENS IN SOME,
BUT NOT ALL 2018 TACOMAS.  THIS IS A SAFETY ISSUE. (2018
Tacoma, NHTSA ID: 1679573; Complaint Date: 7/25/2020)

2018 TACOMA AUTOMATIC TRANSMISSION SHUDDERS,
HESITATES AND MISSES AT SPEEDS BETWEEN 35-60 MPH.
THIS HAPPENS CONSTANTLY. SLIGHT PEDAL AND LOW
RPM'S IN 5TH AND 6TH GEAR IS WHEN IT'S MOST
NOTICEABLE. ON OCCASION, THERE IS A MORE SERIOUS
MISS, WHICH FEELS AS IF YOU HAVE TURNED THE IGNITION
OFF AT 50MPH AND THEN RIGHT BACK ON.  THIS DOES NOT
HAPPEN FREQUENTLY, 4 OR 5 TIMES IN THE 20,000 MILES I'VE
DRIVEN IT.        THE SHUDDER HAS BEEN LOOKED AT BY

BLOOD HURST & O' REARDON, LLP

31

00218260

TOYOTA ON 3 OCCASIONS, AND HAS BEE SHRUGGED OFF AS A "TYPICAL CHARACTERISTIC OF THE VEHICLE".  TOYOTA NORTH AMERICA MADE AN APPOINTMENT FOR ME TO SEE THE SERVICE MANAGER WHO RODE WITH ME AND FELT THE SHUDDER AND MISSING.  HE HAD ME TEST DRIVE A 2019 V6 AUTOMATIC OFF ROAD AND IT ALSO HAD THE SHUDDER AND MISSING IN THE SAME RANGE.    THE FINAL OUTCOME WAS THAT IT IS A CHARACTERISTIC OF THE VEHICLE AND THERE IS NOTHING THAT CAN BE DONE.  THE FUEL PUMP RECALL WAS DONE.  THE POWER TRAIN WAS RE-FLASHED. NO CHANGE IN THE CONDITION.  IT IS VERY UNNERVING AND DISAPPOINTING THAT THEY CONSIDER THIS CONDITION ACCEPTABLE. (2018 Tacoma, NHTSA ID: 1737203; Complaint Date: 3/30/2021)

My 2018 Tacoma is experiencing issues with the transmission jerking and shaking. It is not safe to drive. It is currently sitting parked because we can no longer drive it. We are out of a car due to this issue. Is there anything that can be done to get the problem resolved? (2018 Tacoma, NHTSA ID: 1844399; Complaint Date: 10/1/2022)

2018 2WD Tacoma. Auto transmission. Ever since new and even today, when traveling 30-40 MPH and slowing to anywhere from 10-25 MPH, and then trying to accelerate, the engine and/or transmission stumbles/hesitates for at least a full second, and then the engine races higher and a hard transmission downshift occurs jerking your head and body back and sending the vehicle into a fast acceleration. (2018 Tacoma, NHTSA ID: 1851337; Complaint Date: 11/4/2022)

When I go to accelerate at low speed my vehicle shudders shakes and vibrates, no engine lights or codes have popped up, the issue is somewhere from transmission to the rear end. Im guessing transmission or torque converter. With my vehicle only having 136,000 miles and is well taken care of this is ridiculous, I have checked drive line and tires and everything seems to be working as it should so it has to be something internal. (2018 Tacoma, NHTSA ID: 1848188; Complaint Date: 12/11/2022)

1. VIBRATION FELT WHEN SLOWING DOWN. USUALLY BETWEEN 50 AND 20. BELOW 20 IT GOES AWAY.  FEELS LIKE THE TIRES ARE OUT OF BALANCE BUT MY TRUCK HAS 8K MILES ON IT AND I HAVE FELT IT SINCE THE DAY I BOUGHT

CLASS ACTION COMPLAINT

00218260

BLOOD HURST & O' REARDON, LLP

IT.    2.  ALSO WHEN THE TRANSMISSION IS OUT OF GEAR AND CLUTCH IS OUT OR THE REAR END    MAKES A SQUEAKING NOISE WHEN HITTING BUMPS.    3.  CLUTCH MAKES A NOISE WHEN RELEASING IT.    4.  HIGH PITCH HUM IN 3RD, 4TH, 5TH AND 6TH WHEN MAINTAINING CONSISTENT SPEED.    TOOK IT TO THE DEALER, THE DEALER WAS ABLE TO REPLICATE THE ISSUES WITH COMPARABLE  TRUCK ON THEIR LOT AND BRUSHED IT OFF AS NORMAL. (2019 Tacoma; NHTSA ID: 1634382; Complaint Date: 1/5/2020)

2019 TACOMA SPORT, TRANSMISSION JUDDER, VIBRATE ON SLOWING DOWN AND LIGHT ACCELERATION ON STEP INCLINE ON TOWN OR HIGHWAY  TOYOTA DEALER, TOYOTA OF OLYMPIA IN WASHINGTON  SAYS IT'S NORMAL THAT WORKS AS DESIGNED. THIS CAN'T BE NORMAL GETTING WORSE THE MORE I DRIVE ONLY 3300 MILES PLS HELP WITH THIS PROBLEM MORE PEOPLE  ARE COMPLAINING  ABOUT THIS ISSUE. THANK YOU. (2019 Tacoma; NHTSA ID: 1642694; Complaint Date: 2/1/2020)

INITIAL NOTICE OF RECALL IN NOVEMBER 2019, BY PRESS. FAULTY FUEL PUMP CAN LEAD TO VEHICLE STALL AT HIGH SPEED.  RESULANT SERIOUS INJURY OR DEATH.  I HAVE INQUIRED NUMEROUS TIMES AT THE LOCAL TOYOTA DEALERSHIP IN PERSON, BY PHONE, AND EMAIL. NEVER GET THE SAME OR A RESPONSE THAT IS DEFINITIVE...I DO NOT FEEL SAFE IN THIS VEHICLE AND AFTER RESEARCHING AND FINDING A CLASS ACTION LAWSUIT ON THIS MATTER, I HAVE DECIDED TO GET RID OF THIS VEHICLE..IT HAS HAD SEVERAL RECALLS ALREADY AND NOTED SEVERAL OTHER ISSUES WITH THE TRANSMISSION SHIFTING, BODY, BRAKES AND REAR DIFFERENTIAL.  TO BE BLUNT THIS VEHICLE IS SUBSTANDARD, OVER-PRICED BY TOYOTA AND HAS LED ME TO BELIEVE THAT TOYOTA DESIGN, CONSTRUCTION AND SALES ARE SHODDY AND DECEPTIVE AT BEST.  *TR (2019 Tacoma; NHTSA ID: 1666949; Complaint Date: 6/4/2020)

PURCHASED  MY  VEHICLE  ON  10/19/19.  SHORTLY THEREAFTER, I BEGAN EXPERIENCING THE FOLLOWING: IN THE DRIVE MODE, THE VEHICLE DOES NOT DOWN-SHIFT PROPERLY  (A LAG)  TO  LOWER  GEARS  WHEN  SLOWING DOWN FROM HIGHER SPEEDS(50-60 MPH) TO LOWER SPEEDS

BLOOD HURST & O' REARDON, LLP

00218260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(30-40 MPH). IT STAYS IN 5TH OR 6TH GEAR TOO LONG, CAUSING THE TRUCK/TRANSMISSION TO "LUG" DOWN WITH SOME ENGINE "MISSING" BEFORE IT FINALLY DOWNSHIFTS AUTOMATICALLY. I HAVE TO DRIVE IN THE SPORT MODE AND MANUALLY SHIFT GEARS REGULARLY TO CIRCUMVENT THIS PROBLEM. THE TRANSMISSION SHIFT POINTS ARE NOT SET CORRECTLY, AND/OR THE TRANSMISSION TORQUE CONVERTER STAYS ENGAGED/LOCKED IN TOO LONG AT HIGHER GEARS WHEN SLOWING DOWN TO LOWER SPEEDS. THIS WILL EVENTUALLY LEAD TO TRANSMISSION BEARING FAILURES AND SAFETY PROBLEMS IF THE TRANSMISSION-ENGINE STARTS TO STALL/CUT OUT. TOYOTA CORPORATE HAS BEEN NON-RESPONSIVE TO MY COMPLAINT SUBMITTED. (2019 Tacoma; NHTSA ID: 1680972; Complaint Date: 7/31/2020)

II HAVE A 2019 TOYOTA TACOMA 6-SPEED MANUAL TRANSMISSION. I AM EXPERIENCING A RATTLING NOISE FROM THE TRANSMISSION WHENEVER YOU ARE ROLLING FROM A LOW SPEED IN NEUTRAL. YOU WOULD BE ABLE TO HEAR THE RATTLE FROM THE TRANSMISSION INTENSIFY IF EVER YOU ARE ROLLING THROUGH A SPEED BUMP AT LOW SPEEDS IN NEUTRAL. (2019 Tacoma; NHTSA ID: 1726550; Complaint Date: 2/13/2021)

Transmission shifts when it should not shift! It also jerks when accelerating and maintaining speeds. While in cruse control the truck drops in 20mph in speed really concerning when it would cause a bad wreck while it drops it constantly still jerks and it also floors the truck to get back up to the preselected speed and transmission jerks and studders and drops and speeds back up and so it sounds like it could blow up from it flooring and dropping in speed and flooring it in cruse control This needs fixed and worked out!  Transmission shouldnΓÇÖt be jerking or hunting for gears (2019 Tacoma; NHTSA ID: 1752813; Complaint Date: 6/20/2021)

I JUST BOUGHT A NEW 2020 TACOMA SR5, AND IT HAS VERY POOR ACCELERATION WHEN PASSING OTHER VEHICLES. THERE IS A SIGNIFICANT DEAD SPOT WHEN ACCELERATING. IT SEAMS TO HAVE A TRANSMISSION DELAYED SHIFTING RESPONSE TIME WHEN DRIVING. I CONSIDER THIS UNACCEPTABLE FOR A NEW VEHICLE. IT RUNS WORSE THAN

34

00218260

MY OLD CAR. IT RUNS LIKE ALL THE FUEL INJECTORS ARE DIRTY. ALSO, A FEW DAYS AGO, I WAS PARKED IN A PARKING SPACE THAT HAD A BIT OF AN INCLINE FOR ABOUT 15-20 MINUTES, AND WHEN I PULLED OUT AND PLACED MY GEAR IN DRIVE, THE TRANSMISSION SLIPPED BADLY AND WOULD NOT DRIVE FORWARD AS IF THE TRANSMISSION WAS BROKEN. I ONLY KNOW A LITTLE BIT ABOUT VEHICLES, BUT I KNOW THIS NEW 2020 V6 SR5 TOYOTA TACOMA THAT I JUST BOUGHT IS NOT RIGHT. I WILL BE TAKING IT TO THE DEALERSHIP SOON TO SEE IF THEY HAVE ANY SUGGESTIONS.I HAVE RECENTLY FOUND OUT ABOUT A RECALL REGARDING THE FUEL PUMP. THIS LEADS ME TO BELIEVE THESE PROBLEMS ARE ALL OR IN PART COMING FROM A POOR FUEL PUMP. THE PROBLEM IS THAT THE NEW 2020 TACOMA'S ARE NOT PART OF THE FUEL PUMP RECALL. I FEAR THIS VEHICLES POOR PERFORMANCE WILL PLACE ME AT AN INCREASE RISK OF HAVING AN ACCIDENT WHILE DRIVING INTO A BUSY INTERSECTION OR THE LIKE. I HOPE YOU (THE READER) PROVIDE THIS INFORMATION TO THE APPROPRIATE CHANNELS IN ORDER TO MAKE THIS VEHICLE SAFE AGAIN. (2020 Tacoma; NHTSA ID: 1700932; Complaint Date: 10/20/2020)

2020 TOYOTA TACOMA TRD SPORT, TRANSMISSION LURKS FROM REVERSE INTO DRIVE YOU HAVE TO PRESS THE BRAKE PEDAL A LITTLE HARDER THAN NORMAL TO KEEP FROM LURKING.  SOMETIMES THE VEHICLE SEEMS TO LOOSE POWER WHEN DOWN SHIFTING WHILE ACCELERATING (GOING AROUND A CORNER).  THE TRUCK ALSO SEEMS LIKE ITS HUNTING FOR A GEAR AROUND THE 35MPH OR 43 MPH, ON FLAT SURFACE, GOING DOWN HILL, OR GOING UP HILL.  THIS ALSO HAPPENS ON THE INTERSTATE WHILE GOING 65-70MPH, WHICH WOULD BE CAUSE FOR CONCERN.  THIS FEELS LIKE ITS A TRANSMISSION ISSUE BUT ALSO COULD BE AN ENGINE MISFIRE OF A SPARK PLUG OR SOMETHING.  THIS HAPPENS ON A DAILY BASIS, PURCHASE DATE OF 9.11.2020. (2020 Tacoma; NHTSA ID: 1737040; Complaint Date: 3/29/2021)

2020 TOYOTA TACOMA TRD SPORT, SOMETIMES THE VEHICLE SEEMS TO LOOSE POWER WHEN DOWN SHIFTING WHILE ACCELERATING (GOING AROUND A CORNER). THE

BLOOD HURST & O' REARDON, LLP

00218260

35

CLASS ACTION COMPLAINT

TRUCK ALSO SEEMS LIKE ITS HUNTING FOR A GEAR AROUND THE 35MPH OR 43 MPH, ON FLAT SURFACE, GOING DOWN HILL, OR GOING UP HILL. THIS ALSO HAPPENS ON THE INTERSTATE WHILE GOING 65-70MPH, WHICH WOULD BE CAUSE FOR CONCERN. THIS FEELS LIKE ITS A TRANSMISSION ISSUE BUT ALSO COULD BE AN ENGINE MISFIRE OF A SPARK PLUG OR SOMETHING. THIS HAPPENS ON A DAILY BASIS. DOES ALSO FEEL JERKY AT TIMES. (2020 Tacoma; NHTSA ID: 1739674; Complaint Date: 4/9/2021)

My 2021 Toyota Tacoma is experiencing these exact conditions as discussed in this TSB. T12he only difference between the vehicle in this TSB and mine is I have a 2 wheel drive Tacoma and this TSB is for the 4 wheel drive model. 2021 Toyota Tacoma power train TSB (Bulletin T-SB-0124-20) Bulletin Date:Dec. 15, 2020 Component:Power train. Bulletin Summary:TSB: some 2016 ? 2021 model year tacoma vehicles equipped with an automatic transmission may exhibit a vibration under deceleration (coasting or braking) between 30 ? 10 mph. This vibration is felt in the seat, floorboard, and/or steering w Vehicles covered in this TSB: 2016 Toyota Tacoma, 2017 Toyota Tacoma, 2018 Toyota Tacoma, 2019 Toyota Tacoma, 2020 Toyota Tacoma, 2021 Toyota Tacoma. (2021 Tacoma; NHTDA ID: 1762474; Complaint Date: 8/12/2021)

PCS malfunction, VSC malfunctions, Data transmitter for codes to dealership doesn't work, Transmisson jerk/lost in gears, from stop to go would jerk into gear, hot air comes out of steering wheel (video proof), air coming through window controls. when the Pre-collision system had its malfunction the truck took complete control which gave me no access to breaks or gas, when PCS system kicked off truck jerked really hard & started accelerating on its own causing very high RPMs then just stopped accelerating. Transmission would occasionally seem to have an improper shift & jerk.⊤áI took my vehicle to Toyota of Denton for the 5k service, & stated issues with the PCS & VSC malfunctions shown on the dashbord.⊤áDenton Dealership said don't worry we will take care of it. The itemized reciept doesn't show issues were looked at; & I kept having the same issues. So I took my truck back to the Denton dealership 2nd time & was told "no malfunction light so no ssues were there" by the Service Manager. who also said "the truck sends malfunction codes to a computer at the dealership, but no codes were sent." Which made me feel like there was more wrong with the truck, including electronics, data sender/reciever, & vehicle alert system relay via dash board aswell. Contacted Corp. Informing them of my issues & concerns making it the

BLOOD HURST & O' REARDON, LLP

00218260

3rd time trying to resolve ongoing issues & requested a field inspector from Corp. look at it instead of a dealership. When complaining to Corp. I stated hot air comes from the steering wheel after 1 hr driving it. Field inspector only drove it 45 miles & said nothings wrong with it. I drove this truck for 8,557 & he didnt find anything wrong in the little 45 mile test; yet the black box showed several pending codes on my truck & also the inspectors truck which is the same year & model. Black box data shows pending code on 1/12/21, 4 days before I acquired it; none again until 2/6/21 & then pending codes AT LEAST twice a month until 11/22/21. BBD pic proof. (2021 Tacoma; NHTDA ID: 1804031; Complaint Date: 3/28/2022)

When stopped on an hill and depressing the throttle lightly the "Hill Assist" disengages and allows the vehicle to roll backwards. The 1st time this occurred I had a trailer in drive and it rolled backwards breaking a taillight in a jack-knife situation. I took the vehicle to my dealership were the vehicle was checked and no problem was found. They refused to replaced the tail light as no problem was found. The 2nd time was in congested traffic moving at a snails pace. On a steep hill stop and start traffic. When I slowly applied throttle the vehicle "Hill Assist" disengaged and the vehicle rolled backwards. Appling more throttle finally caused the transmission to engage. Now knowing how this occurred I was able to recreate again and again. I again took the vehicle to my dealership even taking my salesman and the service technician on test drives showing them the safety concern. I was again told that no problems were found. I then took my wife on a test ride to show her how the vehicle could roll backwards on a hill in stop and go traffic. During this drive once the vehicle not only started to roll backwards but when the throttle was depressed more the vehicle stalled and continued to roll backwards until i moved my foot from the throttle to the brake. As the engine was off additional effort was required in depressing the brake. The steering was also harder to turn. Had I rolled an additional 12 feet I would have backed into a retaining wall on the passenger side. My wife has decided to take a different routes to avoid hills that have stop and go traffic. I called Toyota filed case # 220407001182 which they declined to repair the taillight and told me that the vehicle operated as designed and no problems were found. They did tell me if I felt the vehicle was unsafe not to drive it. They indicated they would not provide documentation on the decision. Owners manual doesn't indicate vehicle can roll backwards as "Hill Assist" disengages. Safety Issue. (2022 Tacoma; NHTSA ID: 1814866; Complaint Date: 5/28/2022)

CLASS ACTION COMPLAINT

00218260

My 2022 Tacoma has 1200 miles on it. While turning a corner I slowed down to make the turn when I pushed on the pedal to speed back up there was no response from the engine. It was dark outside and my dash lit up like the key was turned off. I kind of panicked and began pumping the pedal thinking I was out of gas. The fuel gage showed 3/4 an after 3 or 4 seconds it started back up. A week or so before I was at a red light when it turned green I tried to accelerate, the engine hesitated again like it was out of gas. I pumped the pedal but no response. After a few seconds it took off like a jet across the intersection and my foot was barely touching the pedal. Also while driving around 40-50 mph it feels like a stick shift vehicle that needs to be down shifted in a lower gear as there is a chunging feel which I think the transmission can't decide what gear to use. At those speeds it goes away if I manually move the shifter out of D into 4 or 5. Then It runs smooth. I took it to a Toyota Dealer near my house on 1/3/2023 They said they could not duplicate the problem. I said it does not happen all the time. The tech said he reset my computer. (2022 Tacoma; NHTSA ID: 1862686; Complaint Date: 1/4/2023)

Transmission pops out of 2nd gear everyday after setting on level ground. I have questioned Toyota about the fluid levels, which they say its a sealed unit and cant be checked. It takes about 20 feet before the transmission rengages. It only happens when the transmission temperature is cold, then does not happen again. This can leave me without any power. Toyota has checked the vehicle twice and cannot duplicate the issue. The issue started shortly after i bought the vehicle.

Vehicle exhibits symptoms typically associated with (at least in older vehicles) of a failing torque converter. Initial onset was around the 5k mile mark, the truck was purchased brand new. Vehicles shudders under load, especially uphill or from a stop, the truck frequently hunts for the gears during shifts (truck will initiate a shift and then just rev up and down, depending on if you remove your foot when it does it to avoid damaging the engine), I have clanking and a metallic clicking sound coming from the bell housing, tranmission casing and bell housing radiate heat from under the vehicle hot enough to be uncomfortable climbing out of the vehicle after a 30-45 minute drive (my youngest recently started asking me to pick her up out of the truck cause it "burns" **is hot** on her leg, where she used to love climbing and jumping off my steps), my avg milage dropped from low to mid 20s to avg 14-18 miles per gallon since the initial onset, and the dealership and toyota customer service keep telling me there's nothing wrong with it, they all

00218260

do that, and they're just "Vehicle Characteristics" of the Tacoma.. I've driven friends and family members tacomas of the same generation that did not do it, and mine DID NOT DO IT NEW! They told me at first it was just the transmission learning my driving habits and I told them I would give it time.. Last interaction with dealer, who hinted they would buy it, toyota told me that I would have to pay for a transmission service in order to check it properly (manually/not with an OBD scanner) and IF there was a confirmed issue that I could TRY and apply for reimbursement. This vehicle has 22k miles on it and has been serviced as instructed everytime. Originally only very slight surging felt between 40-50mph, now it is at any speeds and significantly more violent at lower speeds or when trying to merge on interstate (truck loses traction to rear end occasionally during 55mph shift in moist or foggy weather while merging) (2022 Tacoma; NHTSA ID: 1890791; Complaint Date: 4/29/2023)

Vehicle exhibits symptoms typically associated with (at least in older vehicles) of a failing torque converter. Initial onset was around the 5k mile mark, the truck was purchased brand new. Vehicles shudders under load, especially uphill or from a stop, the truck frequently hunts for the gears during shifts (truck will initiate a shift and then just rev up and down, depending on if you remove your foot when it does it to avoid damaging the engine), I have clanking and a metallic clicking sound coming from the bell housing, tranmission casing and bell housing radiate heat from under the vehicle hot enough to be uncomfortable climbing out of the vehicle after a 30-45 minute drive (my youngest recently started asking me to pick her up out of the truck cause it "burns" **is hot** on her leg, where she used to love climbing and jumping off my steps), my avg milage dropped from low to mid 20s to avg 14-18 miles per gallon since the initial onset, and the dealership and toyota customer service keep telling me there's nothing wrong with it, they all do that, and they're just "Vehicle Characteristics" of the Tacoma.. I've driven friends and family members tacomas of the same generation that did not do it, and mine DID NOT DO IT NEW! They told me at first it was just the transmission learning my driving habits and I told them I would give it time.. Last interaction with dealer, who hinted they would buy it, toyota told me that I would have to pay for a transmission service in order to check it properly (manually/not with an OBD scanner) and IF there was a confirmed issue that I could TRY and apply for reimbursement. This vehicle has 22k miles on it and has been serviced as instructed everytime. Originally only very slight surging felt between

CLASS ACTION COMPLAINT

40-50mph, now it is at any speeds and significantly more violent at lower speeds or when trying to merge on interstate (truck loses traction to rear end occasionally during 55mph shift in moist or foggy weather while merging) (2022 Tacoma; NHTSA ID: 1994003; Complaint Date: 5/27/2024)

IГÇÖve only had the vehicle about a month with only 1245 miles on it. I was leaving a parking lot and pulled out on the road and the vehicle shifted in neutral after a minute or so the vehicle then slammed back into gear. It did this 2 or 3 times. I pulled into a gas station turned the vehicle off and waited a few minutes. I turned the vehicle back on backed out and preceded to drive when the same issue happened again. But now the vehicle would not shift into other gears. This time the check engine light came on with 3 reported errors 1. Advanced ultrasonic detecting and ranging system malfunction. 2. Drive-start control system malfunction. 3. Check engine light stating malfunction in the electronic control of the engine, throttle, or automatic transmission has been detected. I was only about a mile or 2 from a Toyota dealership and was able to limp the truck to the dealership. The dealership informed me today [XXX], that it will need a new transmission and that there were similar issues on new Tacomas across the US. There were no prior signs of any issues prior to the transmission failure. This happened on a roadway with traffic that comes in both directions. Thanks goodness this didnГÇÖt cause an accident has it happened out of the blue. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (2024 Tacoma; NHTSA ID: 1990073; Complaint Date: 5/10/2024)

Vibration between 25 & 45mph Confirmed by dealer technician possible transmission issue. First noticed on drive home after purchase. No incidents yet. (2024 Tacoma, NHTSA ID: 1990327; Complaint Date: 5/12/2024)

The contact owns a 2024 Toyota Tacoma. The contact stated while driving 10 MPH and depressing the accelerator pedal, the vehicle stalled. There was no warning light illuminated. The contact was able to pull to the side of the road. The vehicle was towed to the dealer, where it was diagnosed that the transmission had failed and needed to be replaced; however, the part to repair the vehicle was not available. The vehicle was not repaired. The manufacturer was notified of the failure and two cases were opened. The contact stated that there was a case for the vehicle replacement and another case for the distribution of parts to the dealer.

CLASS ACTION COMPLAINT

00218260

BLOOD HURST & O' REARDON, LLP

The failure mileage was approximately 989. (2024 Tacoma; NHTSA ID: 1994233; Complaint Date: 5/28/2024)

Brand new 2024 Toyota Tacoma TRD Off Road automatic 2700 miles Truck is two weeks old The Toyota dealership called and reported that the entire transmission needed to replaced after being at the Toyota dealership for a week. Yes it is available for inspection. Toyota tech said that there are no spare transmissions in the U.S. and that it could take 3 months or longer to replace. Toyota tech found metal shavings in transmission fluid. Truck is entirely stock from factory with no customizations. Truck started shifting hard between a few gears and then got stuck in a higher gear and would not move forward even with accelerator to the floor. This was in the middle of the road with multiple vehicles behind me. I am not aware if anyone other than Toyota technicians have inspected the vehicle. There were no warnings, messages, or dashboard lights illuminated when this happened. Toyota dealership also refused to supply a rental car in the meantime while truck is being fixed. I am in the military and have no means to provide transportation to myself or family unless I pay out of pocket. (2024 Tacoma; NHTSA ID: 1999008; Complaint Date: 6/14/2024)

Vehicle only has 209 miles and the transmission is out ,not driveable. (2024 Tacoma; NHTSA ID: 2001115; Complaint Date: 6/23/2024)

While pulling out of my drive way I noticed when I pressed the gas pedal my truck barely moved, it felt like it was in neutral. I pressed the gas pedal further and it started to move but the RPMs were around 6000 RPM. I then pulled to the side of the road and tried shifting it into different modes, cycling through manual and automatic, but still nothing. I then noticed that while in manual mode the display read ΓÇ£S6ΓÇ¥. Which I deduced meant sixth gear. Not wanting to be late for work I just pressed on the gas pedal till the truck got moving and drove the 18 miles to work in sixth gear. After returning to my truck after work, I started it up and it worked fine. A few days later I reported it to the dealer and they had me bring it in for a diagnosis. A day later they reported to me that the truck experienced a transmission failure and would have to be replaced. As of right now I am still waiting to hear when the replacement transmission will arrive. The maintenance advisor stated he could not give me a time frame for the parts to arrive or when the work would be completed. (2024 Tacoma; NHTSA ID: 2002361; Complaint Date: 6/27/2024)

CLASS ACTION COMPLAINT

The contact owns a 2024 Toyota Tacoma. The contact stated while driving at an undisclosed speed, the transmission failed to function as intended. The contact stated that the transmission only shifted into 1st and 2nd gear. The vehicle was taken to the dealer where it was diagnosed with transmission failure. The contact was informed that the transmission needed to be replaced. The vehicle was not repaired. In addition, the contact was informed that the parts to complete the repair were on back order. The manufacturer was made aware of the failure and a case was filed. The failure mileage was approximately 2,543. (2024 Tacoma; NHTSA ID: 2004405; Complaint Date: 7/5/2024)

I bought a 2024 Tacoma TRD Off Road  Premium Package through MAS ( Military Auto Source ). I picked the vehicle up from the Bremerhaven port in Germany on 08 July 2024 it was missing the back bed charging adapter box but MAS said they would cover the cost in writing to fix no big deal and I drove it back to Weiden Germany. Today 09 July 2024 I lost the ability to shift into 2nd, 4th, and 6th gear. There is only 2 of these vehicles in the country of germany right now. The vehicle has approximately 735 Km on it. It probably would have happen early had i been shifting more but the majority of my first in it was on the Autobaun in 6th gear going roughly 130 Km most of the way with no down shifting or ciry driving. The vehicle has not yet been inspected by a toyota tech due to the vehicle not being produced in Germany but it doesnt take a genius to look up the issue your having and see the exact thing from multiple other Toyota owners. Toyota would be best to buy this vehicle back and reach out to me. Vin [XXX]    Below is the customer care email i requested be sent with my reference number and case number. Reach out to me upper mangment.   Hi ├ù├ù├ù├ù ├ù├ù├ù├ù├ù├ù,  We appreciate you taking the time to contact the Toyota Brand Engagement Center. We are dedicated to providing superior service. Your case is filed at our headquarters office under your name and file [XXX].  If you require further assistance, please send us a message by adding a comment here, or give us a call at 800-331-4331. Case Managers are available Monday through Friday from 8:00 a.m. ΓÇô 8:00 p.m. ET. Thanks! - xxxxxx Toyota Brand Engagement Center HQ 469-292-4000   INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (2024 Tacoma; NHTSA ID: 2005394; Complaint Date: 7/9/2024)

Transmission experienced rough shifting from reverse to drive immediately followed by the inability to access gears 1-5. The

BLOOD HURST & O' REARDON, LLP

00218260

transmission was within normal operating temperatures per the onboard temp readings. Going into park or neutral did not fix the issue. Stopping and restarting the engine allowed access to lower gears briefly, but once the vehicle shifted up, it could no longer access the lower gears. Shortly after this, the check engine light illuminated and the vehicle went into limp mode. (2024 Tacoma; NHTSA ID: 2006083; Complaint Date: 7/11/2024)

TRUCK IS ACTING LIKE IT IS IN NEUTRAL SOMETIMES WHILE DRIVING. WILL REV SUPER HIGH WHEN GOING DOWN THE HIGHWAY AT 60, AS WELL AS NOT GOING FROM A STAND STILL. SHIFTING USING THE MANUAL MODE DOES NOT HELP IT AT ALL, AS IT STILL HAS THE SAME ISSUES.   TO MAKE A LONG STORY SHORT, THE TRUCK IS HAVING HARD SHIFTS AND COMES OUT OF GEAR WHILE MOVING AND STOPPED. (NHTSA ID: 2009428; Complaint Date: 7/23/2024)

Pulled into a parking spot put the car in park. Engine stalled check engine light came on with "engine control system malfunctioning warning" . car will not start or completely turn off. (2024 Tacoma; NHTSA ID: 11606056; Complaint Date: 8/2/2024)

The contact owns a 2024 Toyota Tacoma. The contact stated while driving at an undisclosed speed, the vehicle stalled. No warning light was illuminated. The contact restarted the vehicle and drove to the residence. The vehicle was towed to the dealer, where it was determined that the transmission was stuck in sixth gear, and the transmission needed to be replaced; however, the parts were on backorder. The vehicle was not repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 2,300. (2024 Tacoma; NHTSA ID: 11607599; Complaint Date: 8/9/2024)

5000 miles and new 2024 tacoma trd sport auto transmission stopped working . Gears 1-5 stopped engaging. Truck was stuck on road unable to move because truck was trying to start in 6th gear. Got truck towed to Toyota dealer. They contacted Toyota and stated transmission needs replacement along with torque converter. Truck has been at shop for 3 weeks now. Still waiting for parts to be delivered. (2024 Tacoma; NHTSA ID: 11607435; Complaint Date: 8/9/2024)

Eight speed transmission exhibited difficulty in downshifting to lower gears. Loud rumbling sound could be hard inside of truck cabin. Also,

BLOOD HURST & O' REARDON, LLP

00218260

1
2
3
4
5
6
7

upon my inspection, found transmission fluid leaking on the garage floor. All of this occurred at less than 400 total miles on the vehicle. Vehicle was inspected by the local dealer Toyota Service Department and determined to be a defective transmission that must be replaced. It is possible that the transmission could have seized up while driving, causing the vehicle to be uncontrollable. No warning lamps or messages ...only the loud audible sound coming from the transmission. To date, it is unknown as to the cause of failure. At my request, Toyota has assigned a Case Number (#240809001043) and is investigating the failure. (2024 Tacoma; NHTSA ID: 11608149; Complaint Date: August 13, 2024)

8
9
10
11
12

I was driving on the freeway going 68-70 MPH when I had a sudden loss of power. Vehicle could not maintain speeds and was sluggish while making it over to the side of the road. Vehicle was towed to dealership, which could not initially find anything. Next day after test driving vehicle, it was confirmed that the transmission is broken. (2024 Tacoma; NHTSA ID: 11609098; Complaint Date: August 17, 2024)

13
14
15
16
17
18
19
20

My Tacoma SR5 with only 6000 miles of use failed the transmission or automatic gearbox when I was going on the highway hitting the transmission and neutralizing on several occasions having to exit the service channel abruptly so as not to get stranded in the middle of the highway and cause an accident. No warning light on the dashboard came on and according to the dealer it did not show errors or faults. On the third occasion they decided to leave it and tell me that the transmission had to be replaced. I have been waiting for more than 30 days for a response from the Toyota dealer with a promise that they would soon deliver my truck to me. (2024 Tacoma; NHTSA ID: 11609241; Complaint Date: August 18, 2024)

21
22
23
24

Transmission shifts rough in the morning from gears 1-2. I get some rough shifts when warmed up as well. With the about of automatic transmissions failing it's time Toyota tell us what's going on. How can we be expected to drive a new truck every day and worry about if the trans mission will fail. (2024 Tacoma; NHTSA ID: 11609823; Complaint Date: August 20, 2024)

25
26

Transmission failure (2024 Tacoma; NHTSA ID: 11612067; Complaint Date: September 2, 2024)

27
28

While driving I received numerous system malfunction warnings followed by a message to visit my dealership. While driving into the

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

dealership the vehicle started losing power and engine went into complete failure. It is now at dealership and waiting for it to be inspected. When alerts first went off I was unable to stop because I was on a busy dangerous street. (2024 Tacoma; NHTSA ID: 11612202; Complaint Date: September 3, 2024)

While driving on the highway A hybrid System Malfunction occurred, which caused the vehicle to be thrown into 2nd gear. Took the vehicle to dealership and they determined that the transmission had failed. The vehicle was only 1 week only and only had 822 miles on it. (2024 Tacoma i-FORCE MAX Hybrid; NHTSA ID: 11613959; Complaint Daye September 11, 2024)

106.    The above complaints are a sample of complaints posted to NHTSA's website and are believed to be reflected in Toyota's internal documents.

107.    As demonstrated above, Class Vehicles suffer from a uniform defect in the Transmissions and/or related components that causes the vehicles to harshly engage or fail to shift into gear, limits forward motive power ("Limp Mode"), and results in internal component damage and catastrophic transmission failure.

108.    The complaints for the earlier model year Tacoma vehicles further demonstrate Toyota's pre-sale knowledge of the Transmission Defect in the Class Vehicles because, upon information and belief, those pre-Class vehicles used Aisin-brand automatic transmissions of a substantially similar design and exhibited similar failures, because, upon information and belief, the critical components are the same or substantially similar.

109.    Owners and lessees of the Class Vehicles have also reported the Transmission Defect on social media platforms and online forums, including Toyota-specific forums such as "4thgentacoma.com", "tacoma4g.com" and "tacomaworld.com."

110.    Below is a sample of complaints posted to those forums:

- "My 4th gens Tacoma transmission also failed, losing gears 1-5, at 1200 miles." – https://www.tacoma4g.com/forum/threads/toyota-tech-tip-on-

1    transmission-failure-torque-converter-required-during-transmission-

2    replacement-with-debris.6239/

3    • "Way more than 13. I already went through this. New trans after 5000

4    miles. My dealer got one a week after mine showed up. On forums I

5    already seen 15. So wonder how many that haven't posted there trans

6    problems . Number just keep going up the more miles ppl but on this

7    truck." - https://www.tacoma4g.com/forum/threads/toyota-tech-tip-on-

8    transmission-failure-torque-converter-required-during-transmission-

9    replacement-with-debris.6239/page-2

10   • "The same exact issues that you experienced with your truck happened

11   with mine. Just under 800 miles on my truck and now needs a new

12   transmission. I was told that there were no replacement transmissions

13   currently in the US last week when I was given the final diagnosis on my

14   truck, and was updated yesterday that there is no ETA as to when it will

15   come in." - https://www.tacoma4g.com/forum/threads/got-the-truck-

16   back-with-2nd-new-transmission-replacement.5703/page-2

17   • "Put into drive and rpms went up to 4000 barely was able to move did this a

18   few times. Since then trans has up and down shifted harshly and clunks into

19   drive. Mine has been at the dealer since Wednesday. Same code was found.

20   They said they checked the fluid and contacted tech services. Unable to

21   duplicate concern I was told. It literally happens every time you drive it. Told

22   them to drive a new one and compare. Not sure where this is headed. 2800

23   miles" - https://www.tacoma4g.com/forum/threads/got-the-truck-back-

24   with-2nd-new-transmission-replacement.5703/page-4

25   • "I will be calling corporate for a report on my transmission and torque

26   converter that failed . 5000 miles and my trd sport auto trans went out.

27   Been at dealer for 3 weeks waiting for trans and converter to arrive. It

28   arrived Saturday yesterday. So hopefully this week I get it." -

CLASS ACTION COMPLAINT

00218260

https://www.tacoma4g.com/forum/threads/got-the-truck-back-with-2nd-new-transmission-replacement.5703/page-5

- "I didn't ask, but I wouldn't be too worried about the engines having issues at the moment. It's the transmissions as you're aware. My local dealer has already replaced four. Mine will be their fifth, and apparently, another one was dropped off shortly after mine that needs a new transmission." - https://www.tacoma4g.com/forum/threads/got-the-truck-back-with-2nd-new-transmission-replacement.5703/page-5

- "Got my trd off road auto around may/June timeframe. Had new transmission put in around 2700 miles. Now I'm around 6900 miles and this 2nd transmission just got stuck in 2nd gear. Shut the truck off and turned back on and it had a couple rough shifts but it has went thru all the gears. It's doing what the 1st trans did before it failed. So I guess it's back to the dealership." - https://www.tacoma4g.com/forum/threads/pretty-sure-my-2nd-transmission-is-going-to-fail.6354/

- "To update y'all. Transmission was leaking and losing pressure bc of a seal they think. Of course the parts not in because it's new. They said the seal is a manufactured problem because the new transmission came as a unit and they just put they unit on so the failing of the internal components must be manufactured issue. But yes there is a problem. The transmission is losing pressure allowing it not to shift and is leaking fluid. Keep yall updated. Hopefully it's not more than that." https://www.tacoma4g.com/forum/threads/pretty-sure-my-2nd-transmission-is-going-to-fail.6354/

- "Toyota replace trans and torque converter with same part numbers." - https://www.tacoma4g.com/forum/threads/2024-tacoma-trd-pro-full-transmission-replacement-after-342-miles.5917/page-10

Blood Hurst & O' Reardon, LLP

CLASS ACTION COMPLAINT

00218260

BLOOD HURST & O' REARDON, LLP

- "Just got word from my dealer today that my 24 Tacoma SR5 4x4 Long Bed will need its transmission replaced. It had 1200 miles and I lost gears 1-5 when driving. After I parked I turned off the truck, turned it back on, and every gear worked. After an analysis they saw some metal shavings in the transmission fluid and the computer noted that it had an issue with the solenoid. What's interesting is that no check engine light or anything popped up when it happened. The dealer has no ETA on when they'll get the new transmission but they put me up in a Tundra rental." - https://www.tacoma4g.com/forum/threads/2024-tacoma-trd-pro-full-transmission-replacement-after-342-miles.5917/page-8

- "I have seen transmission failures from both plants, 3TY and 3TM. All of the transmissions are made by Aisin at their plants, so I don't think the final assembly location has any impact on this. Aisin has plants in Texas and in North Carolina, but I think truck transmissions all come from the Texas plant." - https://www.tacoma4g.com/forum/threads/2024-tacoma-trd-pro-full-transmission-replacement-after-342-miles.5917/page-7

- "TLDR; Bought a new '24 TRD Pro, truck freaked out on the drive home. Threw Hybrid malfunction errors and now Toyota is replacing the Transmission on a 342 mile old truck."

111.    Upon information and belief, Toyota monitors social media platforms and online forums, including Toyota-specific forums such as "4thgentacoma.com", "tacoma4g.com" and "tacomaworld.com." Accordingly, Toyota is and was aware of the numerous, widespread complaints about the Transmissions in the Class Vehicles.

112.    Toyota knew that the Transmission Defect was present in all Class Vehicles, but has failed to recall them and provide an adequate remedy. Toyota's unconscionable acts deprive Class Members of an adequate remedy, if one is devised and implemented.

113.  The Transmission Defect renders the Class Vehicles inoperable and creates an unreasonable risk of injury or death to Plaintiff, Class Members, and others, and, thus, the Class Vehicles are not fit for their ordinary purpose.

### 3.    Warranty Data

114.  Toyota also knew about the Transmission Defect from its warranty data. Per the TREAD Act, Toyota tracks customer complaints, vehicle diagnoses, and repairs from dealership technicians in a single, aggregated database.[19] Toyota employs persons who monitor the database for repair trends, and engineering and management staff review such trends in regular meetings. For every one complaint filed with NHTSA, Toyota likely receives hundreds or thousands of related warranty claims. Accordingly, Toyota has likely received thousands of Transmission Defect warranty claims from the start of production.

115.  Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, public consumer complaints made online, and the testing performed in response to the consumer complaints, Toyota knew the Transmission Defect was present in all Class Vehicles, but it has not disclosed the Transmission Defect or provided an adequate repair to all Class Vehicles. Toyota's halfhearted and unconscionable acts deprived and continues to deprive Plaintiff and Class Members of the benefit of their bargain. Had Plaintiff and Class Members known what Toyota knew about the Transmission Defect, they would not have purchased their Class Vehicles, or certainly would have paid less to do so.

---

[19]  https://one.nhtsa.gov/nhtsa/announce/testimony/tread.html

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

**C.    Toyota Touted the Safety and Reliability of the Class Vehicles, Concealing the Transmission Defect**

116.    Toyota knowingly marketed and sold/leased the Class Vehicles with the Transmission Defect, while willfully omitting and concealing the true inferior quality and substandard performance of the Class Vehicles.

117.    On December 6, 2016, Toyota released a feature highlighting the efficiency and capability of new technologies in the Transmissions.

BLOOD HURST & O' REARDON, LLP

00218260

**Achieved world-class top level transmission efficiency**



**Realization of a more responsive driving feeling which quickly
reacts to driver's acceleration operation**



Figure A[20]

---

[20]  https://global.toyota/en/powertrain/transmission/ (last visited August 28,
2024).

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

## Details of the new technologies of Direct Shift-8AT

### Low-loss torque friction plate

Lost torque was reduced by 50% with the optimization of friction plate segment shape in order to improve fluid drag force with a disengaged clutch.






Figure B[21]

---

[21]    *Id.*

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260





Figure C[22]

118.    Toyota's overarching marketing message for the Class Vehicles was and is that it creates an efficient and powerful vehicle, without compromising maintaining safety and reliability. This marketing message is false and misleading given the Transmission Defect, which can cause the Class Vehicles' Transmissions to suddenly and unexpectedly fail.

---

[22]    *Id.*

BLOOD HURST & O' REARDON, LLP

00218260

119.   Toyota directly markets, for its benefit, the Class Vehicles to consumers via extensive nationwide multimedia advertising campaigns on television, the internet, billboards, print, mailings, social media, and other mass media, which impart a universal and pervasive marketing message: safe and reliable vehicles.

120.   For example, on their website, Toyota promotes the Class Vehicles' as "ready to deliver day in, day out" and "built to get you there and back"[23]







*Figure* D[24]

BLOOD HURST & O' REARDON, LLP

---

[23]    https://www.toyota.com/tacoma/tacoma-features/performance/

[24]    Exhibit E, 2024 Toyota Tacoma Sales Brochure.

00218260

121.    Similarly, Toyota stated in its 2024 sales brochure that the latest Tacoma is built "to take you as far as you want go."[25]

122.    Toyota's touting of the safety and reliability of the Class Vehicles while knowing of the Transmission Defect and the Transmissions' gross underperformance is unfair and unconscionable.

123.    Toyota has marketed its products, including the Class Vehicles, as safe and reliable vehicles for years.

124.    Although Toyota markets the Class Vehicles as safe and reliable, in the field, the Class Vehicles fail to meet that promise. Instead, Toyota omits the true nature of the Class Vehicles and the fact that the Class Vehicles suffer from the Transmission Defect. Toyota has never disclosed the Transmission Defect to Plaintiff or the other Class Members.

125.    Plaintiff and the other Class Members were exposed to Toyota's pervasive and long-term marketing campaign touting the supposed quality, safety, and reliability of the Class Vehicles.

126.    Plaintiff and the other Class Members, as any reasonable customer would, justifiably made their decisions to purchase or lease their Class Vehicles based, in material part, on Toyota's misleading marketing, including affirmations of facts, promises, and representations, which also omitted any disclosure of the Transmission Defect.

127.    Toyota has actively concealed the Transmission Defect throughout the Class period despite its pervasive knowledge. Specifically, Toyota has:

a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Transmission Defect;

---

[25]    *Id.*

b.      Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles suffered the Transmission Defect, were defective, and not fit for their intended purposes;

c.      Failed to disclose, and actively concealed, the fact that the Class Vehicles suffered the Transmission Defect and were defective, despite that Toyota learned of the Transmission Defect as early as 2016 or before, and certainly well before Plaintiff and the other Class Members purchased or leased their Class Vehicles; and

d.      Failed to disclose, and actively concealed, the existence and pervasiveness of the Transmission Defect even when Class Members directly asked about it during communications with Toyota, Toyota dealerships, and Toyota service centers.

128.   Toyota also creates or approves much, if not all, of the marketing materials provided by a Toyota-authorized dealership to consumers prior to or at the time of purchase. Toyota, through its dealers and those marketing materials, could have disclosed the Transmission Defect and the true nature of the Class Vehicles, but it failed to do so. As a result of Toyota's omissions of material facts at the point of sale, Plaintiff and Class Members were misled and have overpaid for their Class Vehicles.

**D.     Toyota's Dealers Are Its Agents and Plaintiff and Class Members are Third Party Beneficiaries**

129.   Toyota controls its dealerships, and the dealerships act for the benefit of Toyota.

130.   Namely, Toyota controls, among other things, what vehicles the dealerships sell; the number of vehicles supplied to dealerships (based on sales performance); how dealerships market the vehicles; what incentives and rebates a dealership can offer; the layout of dealerships, including logo placements; and how to

diagnose and repair issues. Moreover, when dealerships sell the vehicles to consumers, they bind Toyota to a contract (e.g., warranties).

131.   Toyota "sells" the vehicles to dealerships. Plaintiff and Class Members are third-party beneficiaries of these sales contracts between dealerships and Toyota because the terms of the contracts, such as the warranties, are for the benefit of the end user, not the dealerships, and Toyota designed, manufactured and marketed the Class Vehicles intending that they would be purchased by consumers such as Plaintiff and Class Members.

**E.    Toyota Received Pre-Suit Notice Multiple Times and in Multiple Ways**

132.   Toyota had extensive and exclusive notice of the Transmission Defect, as detailed in Section B, *supra*, paragraphs 1-115. Additionally, given Toyota's extensive and exclusive knowledge of the Transmission Defect, its latency, and Toyota's inability to repair it, any additional notice requirement would be futile.

133.   However, Toyota also had notice of Plaintiff's claims. At the time of filing this complaint, Plaintiff Syed served Defendants a letter providing pre-suit notice and demand for corrective action concerning the defect at issue in this complaint. **Exhibit G**. The notice specifically described the defect at issue, stated the notice was being sent pursuant to California Civil Code § 1782 and stated Defendants had breached warranties and violated California consumer statutes. The notice letter further stated that it was being sent on behalf of Abdul Syed and all other members of the Class as defined herein. Once the time-period set forth in California Civil Code section 1782(a) has expired after providing Notice and Demand to Defendant, Plaintiff will amend this cause of action to seek recovery of damages pursuant to California Civil Code section 1782(d).

**F.    Applicable Warranties**

134.   Toyota issued a New Vehicle Limited Warranty for the Class Vehicles. Toyota issued its Limited Warranty for the benefit of Plaintiff and Class Members,

and for the purpose of persuading Plaintiff and Class Members to purchase the Class Vehicles.

135.    Toyota provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicles is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

136.    The Limited Vehicle Warranty states, in part:

> This warranty covers repairs and adjustments needed to correct defects in materials and workmanship of any parts supplied by Toyota, subject to the exceptions indicated under "What is Not Covered" on pages 14-15.[26]

137.    The Limited Vehicle Warranty lasts for 36 months or 36,000 miles covering all components (except normal maintenance expenses, normal wear and tear, or software updates).

138.    The Powertrain Limited Warranty lasts for 60 months or 60,000 miles, whichever comes first, and covers "repairs needed to correct defects in materials and workmanship of any component . . . supplied by Toyota," including, *inter alia*, the Transmission, transaxle, torque convertor, transfer case, and all internal parts.[27]

139.    Toyota instructs vehicle owners and lessees to take their Class Vehicles to a Toyota-certified dealership for warranty repairs. Many owners and lessees have presented their Class Vehicles to Toyota-certified dealerships with complaints arising from the Transmission Defect and have been denied a free repair.

140.    Toyota has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective, and (2) refusing to perform and/or failing to timely issue adequate repairs to correct the Transmission Defect.

141.    Moreover, Toyota's warranty fails of its essential purpose because the company has failed to offer an effective and permanent repair for the Transmission

---

[26]    Exhibit F, 2024 Toyota Warranty and Maintenance Guide

[27]    *Id.*

BLOOD HURST & O' REARDON, LLP

58

00218260

Defect. Rather, Toyota simply replaces defective Transmissions and components with equally defective Transmissions and components and fails to correct and/or properly diagnose the underlying cause.

142. Toyota has notice of its breach and fraud based on its actual and exclusive knowledge of the Transmission Defect.

143. Moreover, Toyota's failure to effectively repair the Transmission Defect makes any notice requirement futile.

## FRAUDULENT OMISSION/CONCEALING ALLEGATIONS

144. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Toyota responsible for making false and misleading statements regarding the Class Vehicles. Toyota necessarily are in possession of all this information. Plaintiff's claims arise out of Toyota's fraudulent omission and concealment of the Transmission Defect, despite their representations about the quality, safety, and reliability of the Class Vehicles.

145. Plaintiff alleges that at all relevant times, including specifically at the time he and Class Members purchased their Class Vehicle, Toyota knew, or were reckless in not knowing, of the Transmission Defect; Toyota had a duty to disclose the Transmission Defect based upon their exclusive knowledge; and Toyota never disclosed the Transmission Defect to Plaintiff or the public at any time or place in any manner.

146. Plaintiff makes the following specific concealment and omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Toyota.

147. **Who:** Toyota actively concealed and omitted the Transmission Defect from Plaintiff and Class Members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and

BLOOD HURST & O' REARDON, LLP

00218260

therefore unable to identify, the true names and identities of those specific individuals at Toyota responsible for such decisions.

148. **What:** Toyota knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Transmission Defect, as alleged herein. Toyota concealed and omitted the Transmission Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

149. **When:** Toyota concealed and omitted material information regarding the Transmission Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Toyota still has not disclosed the truth about the full scope of the Transmission Defect in the Class Vehicles to anyone outside of their respective entities. Toyota has never taken any action to inform consumers about the true nature of the Transmission Defect in Class Vehicles. And when consumers brought their vehicles to Toyota complaining of the Transmission Defect, Toyota denied any knowledge of or repair for the Transmission Defect.

150. **Where:** Toyota concealed and omitted material information regarding the true nature of the Transmission Defect in every communication they had with Plaintiff and Class Members and made representations about the quality, safety, and reliability of the Class Vehicles. Plaintiff is unaware of any document, communication, or other place or thing, in which Toyota disclosed the truth about the full scope of the Transmission Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Toyota websites. There are channels through which Toyota could have disclosed the Transmission Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

151. **How:** Toyota concealed and omitted the Transmission Defect from Plaintiff and Class Members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Toyota actively concealed and omitted the truth about the existence, scope, and nature of the Transmission Defect from Plaintiff and Class Members at all times, even though it knew about the Transmission Defect and knew that information about the Transmission Defect would be important to a reasonable consumer, and Toyota promised in its marketing materials that Class Vehicles have qualities that they do not have.

152. **Why:** Toyota actively concealed and omitted material information about the Transmission Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Toyota disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## CLASS ALLEGATIONS

153. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23 on behalf of the following Class:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

154. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint or narrowed at class certification.

BLOOD HURST & O' REARDON, LLP

00218260

155.  Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

156.  **Numerosity.** The members of the proposed Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of individuals that are members of the proposed Class. Although the precise number of proposed members is unknown to Plaintiff, the true number of members of each of the Class is known by Defendants. More specifically, Toyota and its network of authorized dealers maintain databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member. Thus, members of the proposed Class may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

157.  **Typicality.** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, paid for Class Vehicles designed, manufactured, and distributed by Defendants which suffer from the Transmission Defect. The representative Plaintiff, like all other members of the Class, has been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing this defective Transmission and related components as a result of the Transmission Defect. Further, the factual bases of Defendants' misconduct are common to all members of the Class and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Class.

BLOOD HURST & O' REARDON, LLP

00218260

158. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the Class Vehicles suffer from the Transmission Defect;

(b) Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the Transmission Defect constitutes an unreasonable safety hazard;

(d) Whether Defendants knew or should have known about the Transmission Defect and, if so, how long Defendants have known of the Transmission Defect;

(e) Whether Defendants had a duty to disclose that the Class Vehicles suffer from the Transmission Defect;

(f) Whether Defendants breached their duty to disclose that the Class Vehicles suffer from the Transmission Defect;

(g) Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the Transmission Defect;

(h) Whether Defendants negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the Transmission Defect;

(i) Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Transmission Defect;

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

00218260

(j)  Whether members of the Class would have paid less for the Class Vehicles if Defendants, at the time of purchase or lease, disclosed that the vehicles suffered from the Transmission Defect;

(k)  Whether Defendants are liable to Plaintiff and the Class for breaching their express and/or implied warranties;

(l)  Whether Defendants violated applicable state consumer protection statutes;

(m)  Whether Defendants have been unjustly enriched; and

(n)  Whether Plaintiffs and the Class are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

159.  **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

160.  **Superiority.** Class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Class is relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would, thus, be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CLAIMS FOR RELIEF

## COUNT 1

### Fraudulent Omission/Concealment

161.    Plaintiff incorporates and realleges each of the preceding paragraphs as though fully set forth herein.

162.    Plaintiff brings this count on behalf of himself and the other Class Members.

163.    Defendants intentionally and knowingly falsely concealed, suppressed, and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Transmissions in the Class Vehicles are defective, exposing drivers, occupants, and members of the public to safety risks with the intent that Plaintiff and the other Class Members rely on Defendants' omissions.

164.    As a direct result of Defendants' fraudulent conduct, Plaintiff and the other members of the Class have suffered actual damages.

165.    As a result of Defendants' failure to disclose to Plaintiff and the other Class Members the material fact that the Transmissions in the Class Vehicles are defective, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the Transmissions and related components or sell their vehicles at a substantial loss. The fact that the Transmissions in the Class Vehicles are defective are material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair, or replacement of the Transmission, and because Plaintiff and the other Class Members had a reasonable expectation that the vehicles would not suffer from the Transmission Defect.

166.    The fact that the Transmissions installed in the Class Vehicles are defective is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. Because of the Transmission Defect, the

BLOOD HURST & O' REARDON, LLP

00218260

Class Vehicles Transmissions' may catastrophically fail or not perform as intended, drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents caused by the Transmission Defect, and the general public is also at risk for being involved in an accident with a Class Vehicle. Plaintiff and the other Class Members would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Transmission Defect, or would have paid less for the Class Vehicles.

167.   Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Transmission Defect would sell more Class Vehicles.

168.   Despite notice of the Transmission Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Members the costs they incurred relating to diagnosing and repairing the Transmission Defect or for the premium price that they paid for the Class Vehicle.

169.   At minimum, Defendants knew about the Transmission Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above. As such, Defendants acted with malice, oppression, and fraudulent intent. Plaintiff and the other Class Members reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment, and omissions.

170.   As a direct and proximate result of Defendants' false representations, omissions, and active concealment of material facts regarding the Transmission

BLOOD HURST & O' REARDON, LLP

00218260

Defect, Plaintiff and the other Class Members have suffered actual damages in an amount to be determined at trial.

## COUNT 2

### Breach of Express Warranty

### U.C.C. § 2-313, *et seq.*

171.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

172.   Plaintiff brings this count on behalf of himself and the other Class Members.

173.   Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Class Members' decisions to purchase or lease the Class Vehicles.

174.   Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

175.   With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

176.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

177.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Toyota offers a 60-month or 60,000-mile Powertrain Warranty "to repairs needed to correct defects in materials and workmanship of any component . . . supplied by Toyota[.]" Under warranties provided to Plaintiff and the other members of the Class, Defendants promised to repair or replace defective Transmissions and/or components arising out of defects in materials and/or workmanship, such as the Transmission Defect, at no cost to owners or lessors of the Class Vehicles.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00218260

178.   Defendants' warranties formed part of the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles. The affirmations of fact and/or promises made by Defendants in the warranties are express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand and Defendants on the other.

179.   Despite the existence of the warranties, Defendants failed to inform Plaintiff and the other Class Members that the Class Vehicles contained the Transmission Defect, and, thus, wrongfully transferred the costs of repair or replacement of the Transmissions to Plaintiff and the other Class Members.

180.   Defendants have failed to provide Plaintiff or the other members of the Class with a meaningful remedy for the Transmission Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

181.   Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

182.   As described above in paragraphs 132-133, Defendants were provided pre-suit notice of the Transmission Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the Transmission Defect and, on information and belief, have refused to repair or replace the Transmissions free of charge despite the Transmission Defect's existence at the time of sale or lease of the Class Vehicles.

183.   Defendants are in privity with Plaintiff and members of the Class. Plaintiff and Class Members, not the dealers, were the intended beneficiaries of Toyota's Class Vehicles and the associated written warranties. Defendants designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of

68

CLASS ACTION COMPLAINT

the Class directly and/or through the doctrine of agency. Defendants' sale of the Class Vehicles was through authorized dealers. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers are Defendants' agents for the purpose of the sale and lease of the Class Vehicles. Further, Defendants knew the identity, purpose and requirements of Plaintiff and members of the Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

184.  As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

185.  Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and the other members of the Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other Class Members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## **COUNT 3**

### **Breach of Implied Warranty**

### **U.C.C. § 2-314, *et seq*.**

186.  Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

187.  Plaintiff brings this count on behalf of himself and the other members of the Class.

188.  Plaintiff and the other Class Members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles. Defendants knew or had

BLOOD HURST & O' REARDON, LLP

00218260

reason to know of the specific use for which the Class Vehicles were purchased or leased.

189.    Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

190.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

191.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

192.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

193.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain the Transmission Defect and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

194.    Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

195.    As described above in paragraphs 132-133, Defendants were provided pre-suit notice of the Transmission Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the Transmission Defect and, on information and belief, have refused to repair or replace the Transmissions free of charge despite the Transmission Defect's existence at the time of sale or lease of the Class Vehicles.

196.    Defendants are in privity with Plaintiff and members of the Class. Plaintiff and Class Members, not the dealers, were the intended beneficiaries of Toyota's Class Vehicles. Defendants designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the

BLOOD HURST & O' REARDON, LLP

Class Vehicles to Plaintiff and members of the Class directly and/or through the doctrine of agency. Defendants' sale of the Class Vehicles was through authorized dealers. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers are Defendants' agents for the purpose of the sale and lease of the Class Vehicles. Further, Defendants knew the identity, purpose and requirements of Plaintiff and members of the Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

197. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the other Class Members have been damaged in an amount to be proven at trial.

## **COUNT 4**

### **Unjust Enrichment**

198. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

199. Plaintiff brings this count on behalf of himself and the other members of the Class.

200. Plaintiff and the other members of the Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles. Defendants were and should have been reasonably expected to provide Class Vehicles free from the Transmission Defect.

201. Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Transmission Defect in the Class Vehicles.

202. As a proximate result of Defendants' false representations, omissions, and concealment of the Transmission Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff and the other Class Members. It would be

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

00218260

inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other Class Members.

203.   There is a direct relationship between Defendants on the one hand, and Plaintiff and the other Class Members on the other, sufficient to support a claim for unjust enrichment.  Defendants, acting in concert, failed to disclose the Transmission Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Defendants knew that disclosure of the Transmission Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Defendants' brand among Plaintiff and the other Class Members. Defendants also knew their concealment and suppression of the Transmission Defect would discourage Plaintiffs and the other Class Members from seeking replacement or repair concerning the Transmission Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

204.   Plaintiff and the other Class Members are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

205.   Plaintiff and the other Class Members seek an order requiring Defendants to disgorge their gains and profits to Plaintiff and the other Class Members, together with interest, in a manner to be determined by the Court.

## <u>COUNT 5</u>

### Violation of California's Consumer Legal Remedies Act
### (Cal. Civil Code § 1750, *et seq.*)

206.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

207.   Plaintiff brings this claim on behalf of himself and the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Consumer Legal Remedies Act (the "CLRA") as

BLOOD HURST & O' REARDON, LLP

00218260

72

1   applied to the facts of this case, or, in the alternative, on behalf of members of the

2   Class who purchased, leased, or owned the Class Vehicles in the state of California.

3       208.   MMC is a "person" as defined by California Civil Code § 1761(c). MMA

4   is a "person" as defined by California Civil Code § 1761(c).

5       209.   Plaintiff and the Class Members are "consumers" within the meaning of

6   California Civil Code § 1761(d).

7       210.   By failing to disclose and concealing the defective nature of the Class

8   Vehicles' Transmissions from Plaintiff and the other Class Members, Defendants

9   violated California Civil Code § 1770(a), as they represented that the Class Vehicles

10  had characteristics and benefits that they do not have, represented that the Class

11  Vehicles were of a particular standard, quality, or grade when they were of another,

12  and advertised the Class Vehicles with the intent not to sell them as advertised. *See*

13  Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

14      211.   Defendants' unfair and deceptive acts or practices occurred repeatedly

15  in Defendants' trade or business, were capable of deceiving a substantial portion of

16  the purchasing public, and imposed a serious safety risk on the public.

17      212.   Defendants knew that the Class Vehicles' Transmissions suffered from

18  an inherent defect, were defectively designed or manufactured, would fail

19  prematurely, and were not suitable for their intended use.

20      213.   Defendants were under a duty to Plaintiff and the other Class Members

21  to disclose the defective nature of the Class Vehicles' Transmissions and/or the

22  associated repair costs because: a) Defendants were in a superior position to know the

23  true state of facts about the safety defect contained in the Class Vehicles'

24  Transmissions; b) Plaintiff and the other Class Members could not reasonably have

25  been expected to learn or discover that their Transmissions have a dangerous safety

26  defect until after they purchased the Class Vehicles; and c) Defendants knew that

27  Plaintiff and the other Class Members could not reasonably have been expected to

28  learn about or discover the Transmission Defect.

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

214. By failing to disclose the Transmission Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

215. The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles' Transmissions are defective, they would not have purchased the Class Vehicles or would have paid less for them.

216. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Transmission Defect. That is the reasonable and objective consumer expectation for vehicles and their Transmissions.

217. As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their Transmissions are defective and require repairs or replacement.

218. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

219. As described above in paragraphs 132-133, Defendants were provided pre-suit notice of the Transmission Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Additionally, pursuant to Cal. Civ. Code § 1782(a), Defendants were notified in writing by certified mail of the particular violations of Section 1770 of the CLRA, which notification demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. A copy of the letter is attached hereto as **Exhibit G**.

220. If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30

BLOOD HURST & O'REARDON, LLP

00218260

days of the date of written notice pursuant to § 1782 of the CLRA, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

221.   Defendants' conduct is fraudulent, wanton and malicious.

222.   Plaintiff seeks all available relief under the CLRA for all violations complained of herein, including, but not limited to, damages, punitive damages, attorneys' fees and cost and any other relief that the Court deems proper.

223.   Accordingly, Plaintiff and the other Class Members seek an order enjoining the acts and practices described above.

224.   Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit H** is the affidavit showing that this action has been commenced in the proper forum.

## COUNT 6

### Violation of the Song-Beverly Consumer Warranty Act
### (Cal. Civil Code § 1790 *et seq.*)

225.   Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

226.   Plaintiff brings this cause of action on behalf of himself and on behalf of members of the Class who purchased, leased, or owned the Class Vehicles in the state of California.

227.   Plaintiff is a buyer as Civil Code section 1791, subdivision (b), defines the term "buyer."

228.   The Class Vehicles are consumer goods, as Civil Code section 1791, subdivision (a), defines the term "consumer good." The Class Vehicles include new motor vehicles, as Civil Code section 1793.22, subdivision (e)(2), defines the term "new motor vehicle."

229.   Toyota was, at all times relevant hereto, the manufacturer, distributor, warrantor, lessor, and/or seller of the Class Vehicles. Toyota knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

BLOOD HURST & O' REARDON, LLP

230.   Plaintiff purchased a Class Vehicle and Toyota provided Plaintiff and California Class Members with a standard express written warranty covering the Class Vehicles.

231.   Toyota is unable to conform Class Vehicles to its express warranty as it has no adequate fix for the Transmission Defect. Toyota simply replaces the Transmissions with similarly defective units and cannot be made to conform to Toyota's express warranty.

232.   Plaintiff and the California Class Members were harmed because they purchased or leased the Class Vehicles and paid the full purchase or lease price of those vehicles but were unable to use such Class Vehicles due to the Transmission Defect. Temporary loaner vehicles to be provided to Plaintiff and California Class Members are not of the same quality as the Class Vehicles purchased or leased and Plaintiff and the Class Members suffered substantial economic injury and other harm as they were deprived of the benefit of the bargain that they struck with Toyota.

233.   Toyota's failure to equip the Class Vehicles with an appropriate and reliable Transmission, and failure to cure the Transmission Defect, such that the Class Vehicles conform to the express warranty, is a substantial factor in Plaintiff's and California Class Members' harm.

234.    Toyota is unable to conform the Class Vehicles to the express warranties despite being afforded a reasonable opportunity to do so. Toyota will not replace the Class Vehicles or refund the purchase price and/or lease payments. Rather, Toyota insists that California Class Members continue to make payments on defective Class Vehicles.

235.   Since being informed of the defect in the Class Vehicles, neither Plaintiff nor Class Members have been able to safely drive their Class Vehicles as the Transmission Defect is likely to cause death or serious injury if it fails while the Class Vehicles are being operated.

BLOOD HURST & O' REARDON, LLP

00218260

236.    Under the Song-Beverly Consumer Warranty Act, all express warranties are accompanied by the implied warranty of merchantability, which may not be disclaimed by the manufacturer or retail seller.

237.    Toyota provided Plaintiff and the California Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they are sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, among other things, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

238.    Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (1) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (2) a warranty that the Class Vehicles would be fit for their intended use while they were being operated.

239.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the California Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective.

240.    Toyota has had multiple reasonable opportunities to cure the breach, but either cannot or will not do so due to conditions reasonably within its control. Pursuant to the Song-Beverly Consumer Warranty Act, if the manufacturer is unable to conform a new motor vehicle to the express warranty, then the manufacturer shall promptly replace the vehicle with one that conforms to the express warranty or reimburse the buyer. Toyota has done neither despite being informed that the Class Vehicles are defective and do not conform to applicable warranties.

BLOOD HURST & O'REARDON, LLP

00218260

241.   Toyota's breach of express and implied warranties was willful and has deprived Plaintiff and the California Class Members of the benefit of their bargain.

242.   Toyota had notice of its breach as alleged herein.

243.   As a direct and proximate cause of Toyota's breach of express and implied warranties, Plaintiff and the California Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff and the California Class Members, who are entitled to recover under section 1794 of the act, including civil penalties, actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other such relief the Court deems appropriate.

**COUNT 7**

**Violation of California's False Advertising Law ("FAL")**

**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

244.   Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

245.   Plaintiff brings this claim on behalf of himself and the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's False Advertising Law (the "FAL") as applied to the facts of this case, or, in the alternative, on behalf of the members of the Class who purchased, leased, or owned the Class Vehicles in the state of California.

246.   Defendants has benefitted from intentionally selling and leasing at an unjust profit defective Class Vehicles at artificially inflated prices due to the concealment of the Transmission Defect, and Plaintiffs and other Class Members overpaid for their Class Vehicles.

247.   Defendants publicly disseminated advertising and promotional material that was designed and intended to convey to the public that the Class Vehicles were safe, reliable, and operated as consumers would expect the Class Vehicles to operate.

BLOOD HURST & O' REARDON, LLP

00218260

248.   Defendants were aware, or should have been aware, of the Transmission Defect at the time Plaintiff and Class Members purchased or leased the Class Vehicles.

249.   However, Defendants negligently or intentionally made representations in its advertisements, and, due to issues it was aware of, did not sell the Class Vehicles that conformed to the representations and promises in the publicly disseminated advertisements.

250.   Defendants unjustly received and retained benefits from Plaintiff and the other Class Members.

251.   It is inequitable and unconscionable for Defendants to retain these benefits.

252.   Because Defendants wrongfully concealed their misconduct, Plaintiff and Class Members were not aware of the facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

253.   Defendants knowingly accepted the unjust benefits of its wrongful conduct.

254.   Defendants had notice of conduct as alleged herein.

255.   As a result of Defendants' misconduct, Plaintiff and Class Members suffered an injury-in-fact and lost money or property in an amount to be proven at trial.

## COUNT 8

### Violation of California's Unfair Competition Law ("UCL")

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

256.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

257.   Plaintiff brings this claim on behalf of himself and the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Unfair Competition Law (the "UCL") as applied to the

79

00218260

BLOOD HURST & O' REARDON, LLP

facts of this case, or, in the alternative, on behalf of members of the Class who purchased, leased, or owned the Class Vehicles in the state of California.

258.    As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value in connection with the purchase or lease of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and members of the Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

259.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

260.    Defendants knew that the Class Vehicles' Transmissions suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

261.    In failing to disclose the Transmission Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

262.    Defendants were under a duty to Plaintiff and the other members of the Class to disclose the defective nature of the Class Vehicles' Transmissions because: a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Transmissions; b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' Transmissions; and c) Defendants actively concealed the defective nature of the Class Vehicles' Transmissions from Plaintiff and the other Class Members at the time of sale/lease and thereafter.

263.    The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable person would have considered

BLOOD HURST & O' REARDON, LLP

them to be important in deciding whether to purchase or lease Defendants' Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles suffered from the Transmission Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

264. Defendants continue to conceal the defective nature of the Class Vehicles and their Transmissions even after Plaintiff and the other Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

265. Defendants' omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Plaintiff also asserts a violation of public policy arising from Defendants' withholding of material safety facts from consumers. Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

266. Defendants' omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

267. Defendants' acts, conduct, and practices were fraudulent, in that they constituted business practices and acts that were likely to deceive reasonable members of the public. Defendants' acts, conduct, and practices were fraudulent because they are immoral, unethical, oppressive, unscrupulous, and/or are substantially injurious to consumers.

268. Defendants' acts, conduct, and practices were unfair in that they constituted business practices and acts the utility of which does not outweigh the harm to consumers. Defendants' business acts and practices were further unfair in that they

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

00218260

offend established public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

269.    A business practice is unlawful if it is forbidden by any law. Defendants' acts, conduct, and practices were unlawful, in that they constituted:

a.    Violations of the California Consumers Legal Remedies Act;

b.    Violations of the Song-Beverly Consumer Warranty Act;

c.    Violations of the False Advertising Law;

d.    Violations of Magnuson-Moss Consumer Warranty Act;

e.    Violations of California Civil Code sections 1572, 1573, 1709, 1710 and 1711; and

f.    Violations of the express and implied warranty provisions of California Commercial Code sections 2313 and 2314.

270.    Thus, by their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

271.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

272.    As described above in paragraphs 132-133, Defendants were provided pre-suit notice of the Transmission Defect, and as such have been afforded a reasonable opportunity to cure their fraud and breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the Transmission Defect and, on information and belief, have refused to repair or replace the Transmissions free of charge despite the Transmission Defect's existence at the time of sale or lease of the Class Vehicles.

273.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

BLOOD HURST & O' REARDON, LLP

274.   Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and the other Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief against Defendants as set forth below:

A.   An order certifying the proposed Class and designating named Plaintiff as the named representative of the relevant Class and designating the undersigned as Class Counsel for all Class;

B.   A declaration that the Transmissions in Class Vehicles are defective;

C.   A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D.   An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and directing Defendants to permanently, expeditiously, and completely repair the Class Vehicles;

E.   An award to Plaintiff and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, including overpayment and diminution in value damages, and punitive damages, in an amount to be proven at trial, as well as other damages available at law;

F.   An award to Plaintiff and Class Members for the return of the purchase price of the Class Vehicles, with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale, and damages;

G.   A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Transmission Defect in Plaintiff's and Class Members' Class Vehicles, can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the defect;

BLOOD HURST & O' REARDON, LLP

00218260

1    H.    A declaration that the Defendants must disgorge, for the benefit of

2    Plaintiff and Class Members, all or part of the ill-gotten profits they received from

3    the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class

4    Members;

5    I.    An award of attorneys' fees and costs, as allowed by law;

6    J.    An award of pre-judgment and post-judgment interest, as provided by

7    law;

8    K.    Leave to amend this Complaint to conform to the evidence produced at

9    trial; and

10    L.    Such other relief as may be appropriate under the circumstances.

11    **DEMAND FOR JURY TRIAL**

12    Plaintiff demands a jury trial on all issues so triable.

13    Respectfully submitted,

14    Dated: September 13, 2024    BLOOD HURST & O'REARDON, LLP
     TIMOTHY G. BLOOD (149343)
15    THOMAS J. O'REARDON (247952)
     PAULA R. BROWN (254142)

16

17    By:    _s/  Timothy G. Blood_
            TIMOTHY G. BLOOD

18

19    501 West Broadway, Suite 1490
     San Diego, CA 92101
20    Tel: 619/338-1100
     619/338-1101 (fax)
21    tblood@bholaw.com
     toreardon@bholaw.com
22    pbrown@bholaw.com

23    BEASLEY, ALLEN, CROW,
     METHVIN, PORTIS & MILES, P.C.
24    W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
25    H. CLAY BARNETT, III (*pro hac vice forthcoming*)
26    J. MITCH WILLIAMS (*pro hac vice forthcoming*)
27    DYLAN T. MARTIN (*pro hac vice forthcoming*)
28    TRENT H. MANN (*pro hac vice forthcoming*)

BLOOD HURST & O' REARDON, LLP

00218260

84

CLASS ACTION COMPLAINT

272 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
dee.miles@Beasleyallen.com
clay.barnett@BeasleyAllen.com
mitch.williams@Beasleyallen.com
dylan.martin@beasleyallen.com
Trent.mann@beasleyallen.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

00218260

85